**IN RE McNEIL**

[230 N.C. App. 241 (2013)]

IN THE MATTER OF THE WILL OF ELZIE ROGERS McNEIL, Deceased

No. COA13-451

Filed 5 November 2013

**Wills—caveat—undue influence—testamentary capacity—duress —insufficient evidence**

The trial court did not err in a will case by granting summary judgment in favor of the propounders of a will. There were no genuine issues of fact concerning undue influence or testamentary capacity and propounders were thus entitled to summary judgment as a matter of law. The Court of Appeals did not address caveators' argument that there were genuine issues of material fact concerning duress because the allegations underlying the challenges to undue influence and duress were identical.

Appeal by Caveators from Order entered on or about 13 December 2012 by Judge Donald W. Stephens in Superior Court, Wake County. Heard in the Court of Appeals 23 September 2013.

*George Ligon, Jr. and Katrina L. Smith, for caveators-appellants.*

*Law Office of David Watters, PLLC, by David T. Watters, for propounder-appellants.*

STROUD, Judge.

Etongia Richardson, Elbert McNeil, Elvin McNeil, and Tiara McNeil ("caveators") appeal from an order entered 13 December 2012 granting summary judgment in favor of Sonja Ely, Ida Ely, and James Adams ("propounders"), the propounders of a 2010 will executed by Elzie Rogers McNeil ("Mrs. McNeil"). For the following reasons, we affirm.

## I. Background

Elzie Rogers McNeil was a longtime resident of Wake County and business owner before she passed away on 16 December 2010. Mrs. McNeil was survived by a number of relatives, including brothers Elbert McNeil, Elvin McNeil, and James Adams, sister Ida Ely, daughter Etongia Richardson, niece Sonja Ely, and granddaughter Tiara McNeil.

In December 2008, Mrs. McNeil executed a "Last Will and Testament" ("2008 will") prepared by attorney Joseph Kosko. Then, in November 2010,

Mrs. McNeil was hospitalized. It is not clear from the record what led to this hospitalization, but Mrs. McNeil had been diagnosed with breast cancer, coronary artery disease, and diabetes, among other illnesses.

While Mrs. McNeil was hospitalized, Sonja Ely contacted attorney Brenda Martin to prepare a new will for Mrs. McNeil. According to Ms. Martin, she informed Sonja that she would only prepare a will at the request of the testator. Ms. Martin later spoke directly to Mrs. McNeil by phone. In that conversation, Mrs. McNeil reminded Ms. Martin that they had met previously when Ms. Martin had prepared a will for one of Mrs. McNeil's friends. Mrs. McNeil expressed her desire to change her will and an urgent need to remove a grandson from the will in light of her failing health.

Mrs. McNeil told Ms. Martin that she would mark up the changes she wanted on the current will and send them over. While still hospitalized, Mrs. McNeil told Sonja what changes she wanted and Sonja marked those changes on the will, then delivered the document to Ms. Martin. Ms. Martin made the indicated changes and sent Mrs. McNeil the draft will. Mrs. McNeil made an additional change, which she discussed directly with Ms. Martin.

On 30 November 2010, Ms. Martin, her assistant, and one of Mrs. McNeil's neighbors went to Mrs. McNeil's home so that she could execute the will. Ms. Martin and Mrs. McNeil spoke for approximately fifteen minutes before she administered an oath to Mrs. McNeil in the presence of the two witnesses and asked her questions about any narcotic medications she was taking and whether she knew why they were there. Mrs. McNeil signed the will, which included a "self-proving clause," under oath and in the presence of two uninterested witnesses. Mrs. McNeil passed away about two weeks later.

On 28 December 2010, Sonja Ely applied for and received letters testamentary to administer Mrs. McNeil's estate. The Clerk of Court for Wake County admitted the 2010 writing to probate as the "Last Will and Testament" ("2010 will") of Mrs. McNeil. On 29 December 2010, Etongia Richardson also applied for and received letters of administration, asserting that her mother died intestate. The Clerk of Court then revoked the letters of administration issued to Etongia as erroneously duplicative.

On 28 February 2011, Etongia, Elbert, and Elvin filed a caveat to the 2010 will, alleging that Mrs. McNeil lacked the capacity to make the will, that the will was procured by undue influence and duress, and that a fiduciary relationship existed between one of the propounders and Mrs. McNeil. The trial court later aligned Tiara McNeil with the other

**IN RE McNEIL**

[230 N.C. App. 241 (2013)]

caveators. Propounders of the 2010 will were Sonja Ely, Ida Ely, and James Adams. After months of discovery, propounders filed a motion for summary judgment on 6 September 2012, which was granted by order entered 13 December 2012. Caveators filed notice of appeal on 14 January 2013.

## II. Summary Judgment

Caveators argue on appeal that the trial court erred in granting summary judgment in favor of propounders on all issues because there were genuine issues of material fact, or alternatively, that the trial court erred in not granting summary judgment to caveators on these issues.

A. Propriety of Summary Judgment on *Devisavit Vel Non*

Caveators argue that the trial court erred and exceeded its authority by "determin[ing] the issue of devisavit vel non because it purported to rule on all issues in this caveat case." The Latin phrase *devisavit vel non* simply "refers to a determination of whether a will is valid." *Seagraves v. Seagraves*, 206 N.C. App. 333, 337 n.4, 698 S.E.2d 155, 160 n.4 (2010). Caveators contend that their challenge to the will's validity on the basis of testamentary incapacity, undue influence, and duress should have been decided by a jury and imply that summary judgment is always inappropriate on that issue.[1] This argument is meritless.

Our Supreme Court has stated that summary judgment on such issues is appropriate, as in other contexts, if "there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and quotation marks omitted). "If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-movant to present specific facts which establish the presence of a genuine factual dispute for trial." *Id.* Thus, the only question is whether the trial court correctly determined that propounders were entitled to summary judgment on the issues of undue influence, testamentary capacity, and duress under the facts presented here.

B. Standard of Review

> Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment

---

1. Caveators do not otherwise challenge the validity of the 2010 will.

as a matter of law. When considering a motion for sum-
mary judgment, the trial judge must view the presented
evidence in a light most favorable to the nonmoving party.
If the movant demonstrates the absence of a genuine issue
of material fact, the burden shifts to the nonmovant to
present specific facts which establish the presence of a
genuine factual dispute for trial. Nevertheless, if there is
any question as to the weight of evidence summary judg-
ment should be denied.

*Id.* (citations and quotation marks omitted). "Where the moving party
offers facts and the opposing party only offers mere allegations, there is
no *genuine* issue as to a material fact." *Moore v. Fieldcrest Mills, Inc.,*
36 N.C. App. 350, 353, 244 S.E.2d 208, 210 (1978), *aff'd,* 296 N.C. 467, 251
S.E.2d 419 (1979).

C.   Undue Influence

Caveators first contend that the trial court erred in determining that
there was no genuine issue of material fact as to undue influence and
duress imposed by propounders, especially Sonja Ely, on Mrs. McNeil.
For the following reasons, we hold that caveators have failed to forecast
sufficient evidence to create a genuine issue of material fact regarding
undue influence.

Our Supreme Court has defined "undue influence" as

something operating upon the mind of the person whose
act is called in judgment, of sufficient controlling effect to
destroy free agency and to render the instrument, brought
in question, not properly an expression of the wishes of
the maker, but rather the expression of the will of another.
It is the substitution of the mind of the person exercising
the influence for the mind of the testator, causing him to
make a will which he otherwise would not have made.

In short, undue influence, which justifies the setting aside
of a will, is a fraudulent influence, or such an overpower-
ing influence as amounts to a legal wrong. It is close akin
to coercion produced by importunity, or by a silent, resist-
less power, exercised by the strong over the weak, which
could not be resisted, so that the end reached is tanta-
mount to the effect produced by the use of fear or force.

Thus, while undue influence requires more than *mere* influ-
ence or persuasion because a person can be influenced to

**IN RE McNEIL**

[230 N.C. App. 241 (2013)]

perform an act that is nevertheless his voluntary action, it does not require moral turpitude or a bad or improper motive. Indeed, undue influence may even be exerted by a person with the best of motives. Nevertheless, influence is not necessarily "undue," even if gained through persuasion or kindness and resulting in an unequal or unjust disposition in favor of those who have contributed to the testator's comfort and ministered to his wants, so long as such disposition is voluntarily made.

*In re Will of Jones*, 362 N.C. at 574, 669 S.E.2d at 577 (citations, quotation marks, ellipses, and brackets omitted).

"There are four general elements of undue influence: (1) a person who is subject to influence; (2) an opportunity to exert influence; (3) a disposition to exert influence; and (4) a result indicating undue influence." *In re Sechrest*, 140 N.C. App. 464, 469, 537 S.E.2d 511, 515 (2000) (citation and quotation marks omitted), *disc. rev. denied*, 353 N.C. 375, 547 S.E.2d 16 (2001).

As our Supreme Court has noted,

It is impossible to set forth all the various combinations of facts and circumstances that are sufficient to make out a case of undue influence because the possibilities are as limitless as the imagination of the adroit and the cunning. The very nature of undue influence makes it impossible for the law to lay down tests to determine its existence with mathematical certainty.

*Matter of Andrews' Will*, 299 N.C. 52, 54-55, 261 S.E.2d 198, 200 (1980).

Nevertheless, the courts of this state consider a number of factors relevant to the issue of undue influence:

1. Old age and physical and mental weakness;

2. That the person signing the paper is in the home of the beneficiary and subject to his constant association and supervision;

3. That others have little or no opportunity to see him;

4. That the will is different from and revokes a prior will;

5. That it is made in favor of one with whom there are no ties of blood;

6.   That it disinherits the natural objects of his bounty;

7.   That the beneficiary has procured its execution.

*Id.* at 55, 261 S.E.2d at 200 (citation and quotation marks omitted).

> A caveator need not demonstrate every factor named in *Andrews* to prove undue influence, as undue influence is generally proved by a number of facts, each one of which standing alone may be of little weight, but taken collectively may satisfy a rational mind of its existence.
>
> Accordingly, any evidence showing an opportunity and disposition to exert undue influence, the degree of susceptibility of the testator to undue influence, and a result which indicates that undue influence has been exerted is generally relevant and important. If a reasonable mind could infer from such evidence that the purported last will and testament is not the product of the testator's free and unconstrained act, but is rather the result of overpowering influence sufficient to overcome the testator's free will and agency, then the case must be submitted to the jury for its decision.

*In re Will of Jones*, 362 N.C. at 576, 669 S.E.2d at 578 (citations, quotation marks, and brackets omitted).

Caveators argue in a summary fashion that "there is ample evidence to raise an issue of material fact on the issue of a confidential and/or fiduciary relationship between Mrs. McNeil and Propounders." They fail to specify which of the propounders was in a fiduciary relationship with Mrs. McNeil, what the nature of that relationship was, or point to any evidence in the record to support that assertion. Therefore, we consider that argument abandoned, N.C.R. App. P. 28(b)(6), and will only consider whether there is a genuine issue of material fact on undue influence under the *Andrews* factors.

As to the first *Andrews* factor, "old age and physical and mental weakness," the evidence forecast by the parties shows that Mrs. McNeil was 72 years old when she executed the 2010 will and that she had been physically weakened by cancer and other illnesses. Attorney Brenda Martin, Ms. Martin's assistant, and Nancy Kelly—one of Mrs. McNeil's friends and neighbors—were present when Mrs. McNeil executed the 2010 will. Ms. Martin spoke with Mrs. McNeil for fifteen minutes about her family and her assets and whether she was taking any narcotic medication— she indicated that she was not and caveators have not produced contrary

evidence. Ms. Martin asked if Mrs. McNeil knew who she was and why she was there. Mrs. McNeil stated her name and said that Ms. Martin was there regarding the signing of her will. Mrs. McNeil also identified the current President of the United States and the time of day. Ms. Martin then went through the draft will paragraph by paragraph with Mrs. McNeil.

All three of the witnesses present that day averred that Mrs. McNeil was alert and lucid. Ms. Martin described Mrs. McNeil's demeanor on 30 November 2010 as "a general giving orders to her troops." Approximately a week later, Mrs. McNeil went to the Renaissance Funeral Home to discuss burial arrangements with the owner, Joseph Smolenski, Jr. Mr. Smolenski averred that although Mrs. McNeil was in a wheel chair, she asked appropriate questions, gave appropriate answers, and even negotiated a discount for her casket.

Although caveators have averred that Mrs. McNeil at times could not remember their names or the names of her doctors, the averments are extremely general and vague. Caveators have failed to identify any specific instances of such mental infirmity. Instead, the caveators' averments and responses to interrogatories largely repeat one another without providing additional detail. "Where the moving party offers facts and the opposing party only offers mere allegations, there is no genuine issue as to a material fact." *Moore*, 36 N.C. App. at 353, 244 S.E.2d at 210.

The second *Andrews* factor, whether testator was in the home of the beneficiary and subject to her supervision, weighs in favor of neither party. There was evidence that propounders lived with Mrs. McNeil at her McKay Place residence, though it is not clear whether *all* of the propounders lived with her, or only some. There was no evidence that Mrs. McNeil was subject to the constant association and supervision of any of the propounders. Indeed, there is no evidence whatsoever about the living arrangement other than the fact that—perhaps some, perhaps all—of the propounders lived with Mrs. McNeil.

Caveators presented no evidence on the third *Andrews* factor. There is no indication in the record that others had little opportunity to see and interact with Mrs. McNeil. Indeed, the affidavits submitted by Mrs. Kelly and Mr. Smolenski suggest otherwise.

The fourth *Andrews* factor, whether the new will is different from and revokes a previous will, weighs heavily in favor of propounders. The 2010 will is substantially similar to the 2008 will.[2] The only substantive

---

2. There also appears to have been a 2007 will, but a copy of that document does not appear in the record.

differences between the two wills are: (1) under the 2010 will, grandson Anthony McNeil, who is not a party to this action, inherits nothing; (2) as a result of Anthony's disinheritance, caveator Tiara McNeil now solely holds the remainder interest in the McKay Place residence, at the expiration of a life estate bequeathed to propounders Ida Ely and James Adams;[3] (3) there is no mention in the 2010 will of "Mother and Daughter Salon"—a business owned by Mrs. McNeil and caveator Etongia Richardson;[4] (4) Eleanor Sykes—one of Mrs. McNeil's nieces—receives all of Mrs. McNeil's jewelry; and (5) caveator Etongia Richardson, caveator Tiara McNeil, and April Colfield—a granddaughter who is not a party—each receive a one-third interest in the residuary estate.

None of the propounders benefit more under the 2010 will than they did under the 2008 will and it appears that caveators have not lost any interests to which they would have been entitled under the prior will. Indeed, some of the caveators have gained under the new will.

As to the fifth and sixth *Andrews* factors, Mrs. McNeil is related by blood to all beneficiaries of her 2010 will. Additionally, the only person disinherited under the 2010 will is grandson Anthony McNeil. As noted above, Mrs. McNeil specifically told her attorney that she wanted to change her will in order to remove a grandson. It is not clear from the record what, if anything, precipitated this change, but it is clear that Mrs. McNeil intended to remove him.

Finally, as to the seventh *Andrews* factor, Sonja Ely, one of the beneficiaries under the 2010 will, did assist Mrs. McNeil in procuring the will. Sonja Ely called the attorney's office to arrange a discussion between the attorney and Mrs. McNeil, helped deliver documents between Mrs. McNeil and the attorney, and was present when Mrs. McNeil executed the will. Neither of the other propounders assisted with the procurement of the will in any way. But, as noted above, Sonja Ely did not benefit any more under the 2010 will than she did under the 2008 will. There is no indication that she had any role in procuring that prior will.

---

3. This life estate was present in both wills.

4. Previously, half of Mrs. McNeil's interest in the business was devised to Etongia Richardson and one quarter of her interest was devised each to Tiara and Anthony McNeil. The significance of that omission is not apparent since Etongia Richardson was already a partner in that business and has a one-third share in the residuary estate under the 2010 will. It is not clear from the record what kind of business entity it is or how Mrs. McNeil's death would affect ownership interests. Caveators do not explain how this change prejudices their interest.

**IN RE McNEIL**

[230 N.C. App. 241 (2013)]

Considering these factors together, we conclude that caveators have failed to forecast sufficient evidence of undue influence. The 2010 will largely copied the 2008 will and propounders do not benefit in any way from the changes. All of the beneficiaries are blood relatives and the 2010 will does not disinherit any of the natural objects of Mrs. McNeil's bounty other than her grandson. There is no evidence that Mrs. McNeil was under constant control and supervision by propounders. In sum, there is no evidence on the third and fourth elements of undue influence: a disposition to exert influence and a result indicating undue influence.

The evidence forecast here is not sufficient to satisfy a rational mind that Sonja Ely or the other propounders substituted their will for that of Mrs. McNeil, causing her to make a will which she otherwise would not have made. We hold that there is no genuine issue of fact material to that determination and that propounders are entitled to judgment as a matter of law on the issue of undue influence.[5]

D.  Testamentary Capacity

Caveators next contend that there is a genuine issue of material fact regarding whether Mrs. McNeil had the capacity to make her 2010 will. We disagree.

> An individual possesses testamentary capacity—the capacity to make a will—if the following is true: She (1) comprehends the natural objects of her bounty, (2) understands the kind, nature and extent of her property, (3) knows the manner in which she desires her act to take effect, and (4) realizes the effect her act will have upon her estate.
>
> The presumption is that every individual has the requisite capacity to make a will, and those challenging the will

5. Although caveators challenge the validity of the will under both undue influence and duress, caveators' allegations underlying both are the same. Because we hold that the forecast of evidence is insufficient even to create a genuine issue of material fact as to undue influence and because the allegations underlying both challenges are identical, we need not address caveators' arguments on duress. *See generally, In re Loftin's Estate,* 285 N.C. 717, 722-23, 208 S.E.2d 670, 675 (1974) ("Duress is the result of coercion and may be described as the extreme of undue influence and may exist even when the victim is aware of all facts material to his decision."); *Link v. Link,* 278 N.C. 181, 191, 179 S.E.2d 697, 703 (1971) (Duress, fraud, and undue influence "are related wrongs and, to some degree, overlap. They are, however, not synonomous. Proof of facts sufficient to show one does not necessarily constitute proof of either of the other two. . . . Duress is the result of coercion. It may exist even though the victim is fully aware of all facts material to his or her decision. Undue influence may exist where there is no misrepresentation or concealment of a fact and the pressure applied to procure the victim's ostensible consent to the transaction falls short of duress." (citations omitted)).

bear the burden of proving, by the greater weight of the evidence, that such capacity was wanting.

However, to establish testamentary incapacity, a caveator need only show that one of the essential elements of testamentary capacity is lacking. It is not sufficient for a caveator to present only general testimony concerning testator's deteriorating physical health and mental confusion in the months preceding the execution of the will, upon which a caveator based her opinion as to the testator's mental capacity. *A caveator needs to present specific evidence relating to testator's understanding of his property, to whom he wished to give it, and the effect of his act in making a will at the time the will was made.*

*Seagraves*, 206 N.C. App. at 349, 698 S.E.2d at 167 (citations, quotation marks, and brackets omitted) (emphasis added).

Almost all of caveators' evidence on testamentary capacity are general allegations of confusion and deteriorating health. None of their affidavits or responses to interrogatories identifies any specific instance in which Mrs. McNeil was unable to recall the name of a family member or understand what was going on around her. They have produced no medical records or affidavits from treating professionals that show mental infirmity. Indeed, caveators' responses to propounders' interrogatories specifically state that they are unable to recall any specifics. As we held in Seagraves, such general statements of deteriorating mental or physical health are insufficient to support a claim of testamentary incapacity. *See id.* The specific evidence in the record, described in our discussion of the first *Andrews* factor, shows that Mrs. McNeil generally understood what assets she had, who the people around her were, and that the 2010 will accurately reflected her intended distribution of assets.

The only specific, relevant evidence forecast by caveators that shows Mrs. McNeil misunderstood the effect of her will was the provision regarding disposition of "ownership" of Mrs. McNeil's apparently non-profit corporation. Both the 2008 will and the 2010 will devise the business to Sonja Ely. The 2010 will states: "I hereby devise and bequeath all of my entire interest in and all my shares of stock in my business known as McNeil's Home Service, Inc. to my niece, Sonjia [sic] Ely." Caveators correctly point out that if McNeil's Home Service, Inc. is a non-profit corporation—as it appears to be—then there are no shares to bequeath. *See* N.C. Gen. Stat. § 55A-6-21 (2011) (prohibiting a non-profit

**IN RE McNEIL**

[230 N.C. App. 241 (2013)]

corporation from issuing stock). But we fail to see how a possible misunderstanding of corporate law demonstrates testamentary incapacity.[6]

The 2010 will's provisions regarding McNeil's Home Service are materially similar to those in the 2008 will—both provisions purport to transfer whatever interest exists to Sonja Ely. The 2008 will did have a provision "request[ing] that . . . Sonja receive assistance operating McNeil's Home Service, Inc. from . . . Andrew McNeil and from . . . Tiara McNeil." This provision was omitted from the 2010 will, but as propounders note, such precatory language in a provision clearly bequeathing Sonja ownership would likely not have been binding in any event. *See Rouse v. Kennedy,* 260 N.C. 152, 156, 132 S.E.2d 308, 312 (1963) (holding that precatory language, such as "wish" or "desire," in a will is not a testamentary disposition of property).

Caveators have "presented only general testimony concerning testator's deteriorating physical health and mental confusion in the months preceding the execution of the will." *Seagraves,* 206 N.C. App. at 349, 698 S.E.2d at 167 (citation and quotation marks omitted). They have failed "to present specific evidence relating to testator's understanding of [her] property, to whom [she] wished to give it, and the effect of [her] act in making a will at the time the will was made." *Id.* Therefore, we hold that there is no genuine issue of material fact as to Mrs. McNeil's competence at the time she executed her 2010 will and that propounders are entitled to judgment as a matter of law on testamentary capacity.

### III. Conclusion

The trial court correctly concluded that there are no genuine issues of material fact as to undue influence or testamentary capacity and that propounders are entitled to judgment as a matter of law. Therefore, we affirm the trial court's order granting propounders' motion for summary judgment.

AFFIRMED.

Chief Judge MARTIN and Judge GEER concur.

---

6. "[H]ave not many wills been established where the testator had ample capacity to understand but who was laboring under some mistake of law or fact so that he did not know what he was doing?" *Lawrence v. Steel,* 66 N.C. 584, 588 (1872); *see also, Mims v. Mims,* 305 N.C. 41, 60, 286 S.E.2d 779, 792 (1982) ("Mere ignorance of law, unless there be some fraud or circumvention, is not a ground for relief in equity whereby to set aside conveyances or avoid the legal effect of acts which have been done." (citation, quotation marks, and brackets omitted)). Moreover, this misunderstanding appears not to be limited to Mrs. McNeil. One of caveators' interrogatories asked propounders to "[s]tate the name, address, and phone number of all stockholders of McNeil's Home Service, Inc. during the last five years." Propounder Sonja Ely responded that Mrs. McNeil "was the sole shareholder."