BRYANT, Judge.
*584 Where caveators cannot establish prejudice as a result of the trial court's ruling excluding certain testimony, we find no prejudicial error. Where propounders, caveators, and the trial court all acknowledged during trial that propounders' "Last Will and *218 Testament of Charles W. Pickelsimer, Jr., dated 17 August 2010" would be admitted into evidence as Exhibit 2, the trial court cannot be held to have abused its discretion in referring to the 17 August 2010 will as Propounders' Exhibit 2.
Charles W. Pickelsimer, Jr. (Charles or the decedent), was born on 25 May 1931. He was a resident of Transylvania County and was married to Ann B. Pickelsimer. They had two children, Lynn P. Williams and Charles W. Pickelsimer, III (Chuck). In the 1960s, Charles inherited from his father stock in a family telecommunications company, Citizen's Telephone Company. For Christmas, Charles often gave his children and grandchildren stock certificates in the company, certificates that accumulated over the years. In 2008, Charles began experiencing severe headaches. He was diagnosed with temporal arteritis and began experiencing significant memory lapses.
In December 2008, Charles sold the company. According to David Albertson, the executor of Charles's estate and an employee of Citizen's Telephone Company since 1963 and serving as secretary-treasurer controller since 1983, near the time of the sale, the company had accumulated cash reserves in the amount of $19 million. A dividend was declared and the cash was distributed to shareholders just before the company was sold. Charles' daughter, Lynn, and Lynn's daughter, Whitney A. Butterworth, held an aggregate of ten percent of the company stock. Likewise, Charles' son, Chuck, and his children, also held an aggregate of ten percent of the stock. The stock dividend distribution yielded Lynn and her daughter between $1.9 and $2 million, the same approximate yield that went to Chuck and his children. Citizen's Telephone Company was sold for $65 million. At the time of the sale, due to their aggregate stock holdings, Lynn and her daughter received approximately $6 million, as did Chuck and his children.
In 2009, Charles and his wife, Ann executed an estate plan designed to protect their assets and minimize estate taxes during conveyance. The 2009 Estate Plan included a will and a revocable trust (the "2009 Will" and the "2009 Trust"). Lynn, Chuck, and Whitney (caveators) were the primary beneficiaries of the 2009 Estate Plan.
*585 In December 2009, Ann was diagnosed with cancer. Her health declined rapidly, and she died on 20 March 2010. In January 2010, just prior to Ann's death, Charles was diagnosed with mild dementia and memory loss. Following Ann's death, Charles's condition continued to decline. According to caveators, he became "increasingly erratic and paranoid. At times he was not oriented to time and place." Caveators alleged that during this time, Betty McCrary (friend of Charles Pickelsimer and former friend of the Pickelsimer family), Albertson, and possibly others forced themselves upon Charles in order to drive a wedge between him and his children, and that "one or more of these individuals told Decedent repeatedly that his children had stolen money from him and were trying to steal more...."
In April 2010, Charles' daughter Lynn learned that Charles had revoked the durable power of attorney and healthcare power of attorney held by her since Charles executed it in 2009. Then, in August 2010, Charles revoked the 2009 Estate Plan and executed a new 2010 Estate Plan consisting of a 2010 Will and a 2010 Trust. Charles Pickelsimer, Jr., died on 6 July 2011. Charles was survived by his two children, caveators Lynn P. Williams and Charles W. Pickelsimer, III, three grandchildren-including caveator Whitney A. Butterworth-and one great-grandchild.
On 11 July 2011, the Transylvania County Clerk of Court received a four-page document titled "Last Will and Testament of Charles W. Pickelsimer, Jr.," dated 17 August 2010. The Clerk of Court admitted the document to probate on 11 July 2011 and appointed David Albertson as Executor of decedent's estate. According to caveators, they only learned of the 2010 Will and 2010 Trust after Charles' death.
On 20 November 2012, in Transylvania County Superior Court, caveators Lynn P. Williams, Charles W. Pickelsimer, III (Chuck), and Whitney A. Butterworth, individually and on behalf of their minor and *219 unborn issue, entered a caveat to the probate of the document titled "LAST WILL AND TESTAMENT OF CHARLES W. PICKELSIMER, JR.," dated 17 August 2010.
Caveators acknowledged that pursuant to the 2010 Will, David Albertson, Betty McCrary, Shelter Available for Family Emergency (SAFE), Inc., Brevard College, and Transylvania Hospital, Inc., (propounders) had an interest in Charles's estate. However, caveators allege that McCrary, Albertson, and others prevailed upon Charles to disinherit his children and grandchildren and instead benefit McCrary, Albertson, and others, and that they interfered with caveators' attempts to spend time with their father. Caveators charge that Charles's 2010 Will and *586 2010 Trust "disinherit[s] his own family and leav[es] substantial assets instead to or for the benefit of Mr. Albertson, Ms. McCrary and others who were not the natural objects of his bounty." Caveators assert that "[t]he 2010 Will and 2010 Trust do not reflect the desires and wishes of [Charles Pickelsimer, Jr.]"
All propounders received a citation and notice of caveat, and all propounders except SAFE (Shelter Available for Family Emergency, Inc.) responded to the citation and notice of caveat.
A jury trial on the caveat proceeding was held in Transylvania County Superior Court during the 14 October 2013 Civil Session before the Honorable Anderson Cromer, Judge presiding. Extensive testimony was presented by both propounders and caveators. During the course of the proceeding, the last will and testament that Charles Pickelsimer, Jr., signed on 17 August 2010 was introduced as Exhibit 2. The trial court entered a directed verdict for propounders determining they had met their burden of proof required to establish that the challenged will was validly executed. The burden of proof then shifted to caveators to establish that the will was procured by undue influence. At the conclusion of all the evidence, the jury returned a unanimous verdict against the caveators, determining as a matter of fact that the execution of Propounders' Exhibit 2 was not procured by undue influence. Further, the jury found that "Propounders' Exhibit 2 and every essential part of it" was the last will and testament of Charles W. Pickelsimer, Jr. The trial court entered judgment on 6 December 2013 in accordance with the jury verdict and ordered that "[t]he document dated 17 August 2010, marked as Propounders' Exhibit 2 at trial, propounded for probate, and every part thereof, is the Last Will and Testament of Charles W. Pickelsimer, Jr., and it is hereby admitted to probate in solemn form."
Caveators moved for a new trial; however, on 30 December 2013, the trial court denied the motion for a new trial. Caveators then entered notice of appeal from the trial court's 6 December 2013 order admitting to probate the Last Will and Testament of Charles W. Pickelsimer, Jr., dated 17 August 2010.
_________________________
Legal Background
"A caveat is an in rem proceeding. G.S. § 31-32. It is an attack upon the validity of the instrument purporting to be a will. The will and not the property devised is the res involved in the litigation." In re Will of Cox, 254 N.C. 90, 91, 118 S.E.2d 17, 18 (1961) (citation omitted). The *587 administration of a decedent's estate is a process necessarily overseen by the Clerk of Superior Court. In re Will of Durham, 206 N.C.App. 67, 79, 698 S.E.2d 112, 122 (2010). "Upon the filing of a caveat, the clerk shall transfer the cause to the superior court for trial by jury. The caveat shall be served upon all interested parties in accordance with ... [our] Rules of Civil Procedure." N.C. Gen.Stat. § 31-33(a) (2013). "The 'parties' are not parties in the usual sense but are limited classes of persons specified by the statute who are given a right to participate in the determination of probate of testamentary script. It [is] for the trial judge to determine what persons fit the statutory description...." In re Ashley, 23 N.C.App. 176, 181, 208 S.E.2d 398, 401 (1974) (citations omitted).
The issue of whether the decedent made a will and whether a given document is his will, is known as devisavit vel non, translated from the Latin as "he devises or not." BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE, 272 (2nd *220 ed.1995). "Devisavit vel non [sic] requires a finding of whether or not the decedent made a will and, if so, whether any of the scripts before the court is that will." In re Will of Hester, 320 N.C. 738, 745, 360 S.E.2d 801, 806 (1987) (citation omitted).
In re Will of Mason, 168 N.C.App. 160, 162, 606 S.E.2d 921, 923 (2005).
In a caveat proceeding, the burden of proof is upon the propounders to prove that the instruments in question were executed with the proper formalities required by law. In re Will of West, 227 N.C. 204, 41 S.E.2d 838 (1947). Once this has been established, the burden shifts to the caveator to show by the greater weight of the evidence that the execution of the will was procured by undue influence. Id.
In re Andrews, 299 N.C. 52, 54, 261 S.E.2d 198, 199 (1980).
In this appeal caveators raise two issues: whether the trial court erred by (I) excluding testimony of decedent's statements; and (II) entering a directed verdict and judgment for devisavit vel non on the issue of whether "propounders exhibit 2" constituted the last will and testament of Charles W. Pickelsimer, Jr.
I
Caveators argue that the trial court committed prejudicial error in excluding testimony of statements made by Charles under the Dead *588 Man's Statute. Caveators contend that had the jury heard the excluded testimony, a different result would have likely ensued. We disagree.
[T]he standard of review for use [in reviewing a trial court's exclusion of evidence pursuant to our Rules of Evidence, Rule 601(c) ] is one that involves a de novo examination of the trial court's ruling, with considerable deference to be given to the decision made by the trial court in light of the relevance-based inquiries that are inherent in the resolution of certain issues involving application of Rule 601(c), including the provisions which result in "opening the door" to the admission of otherwise prohibited testimony.
In re Will of Baitschora, 207 N.C.App. 174, 181, 700 S.E.2d 50, 55-56 (2010).
Rule 601(c) of our Rules of Evidence is commonly referred to as the Dead Man's Statute. It is entitled "Disqualification of interested persons" and provides as follows:
Upon the trial of an action, or the hearing upon the merits of a special proceeding, a party or a person interested in the event, or a person from, through or under whom such a party or interested person derives his or her interest or title by assignment or otherwise, shall not be examined as a witness in his or her own behalf or interest, or in behalf of the party succeeding to his or her title or interest, against the executor, administrator or survivor of a deceased person, or the guardian of an incompetent person, or a person deriving his or her title or interest from, through or under a deceased or incompetent person by assignment or otherwise, concerning any oral communication between the witness and the deceased or incompetent person. However, this subdivision shall not apply when:
(1) The executor, administrator, survivor, guardian, or person so deriving title or interest is examined in his or her own behalf regarding the subject matter of the oral communication.
(2) The testimony of the deceased or incompetent person is given in evidence concerning the same transaction or communication.
*589 (3) Evidence of the subject matter of the oral communication is offered by the executor, administrator, survivor, guardian or person so deriving title or interest.
N.C. Gen.Stat. § 8C-1, Rule 601 (2013).
Caveators first contend that propounders opened the door to the admission of evidence regarding Charles Pickelsimer's statements on why he had "fallen out" with Brevard College. Caveators contend that the excluded evidence goes to a factual issue central to this case: Charles' relationship with Brevard College.
During the trial, propounders presented testimony from John Kelso, the attorney who *221 drafted the 2010 Will and 2010 Trust. Kelso testified to conversations he had with Charles, particularly one that took place on 16 July 2010 during a brainstorming session during which Charles indicated to whom he might leave money or assets, how to go about conveying those assets, and charitable giving. During his testimony Kelso referred to notes he had taken during the meeting.
A. Don't want to leave them a goddamn thing because they have basically stolen his money from him. He is absolutely sure of that. Is not exactly sure of where he does want to leave things to, but is very sure of where he doesn't want to leave things.
Q. And this doesn't indicate who "them" references....
A. His children.
...
A. Is interested in some charitable organizations. Is closest to Brevard College of any of the organizations around here. Maybe some for the hospital. He knows his children were afraid of his getting remarried.... If he was going to leave it to someone now, it would be Betty McCrary. She has three children who have been nicer to him than his own children.... He is thinking on Cascade, if he can get others to go along with him, of selling it to the federal government....
...
Thinking about an amount for Betty. Maybe leave the Cascade Power stock in a way that it might somehow go to the State. Want to leave some for SAFE, a *590 battered woman's shelter, help women and children get out of abusive homes.
Following Kelso's testimony, Caveators submitted a brief to the trial court arguing that propounders had opened the door to testimony otherwise excluded by Rule 601(c). The trial court ruled that Kelso's testimony of oral communications with Charles had indeed opened the door to testimony by other interested parties of oral communications with Charles. Caveators then submitted a proffer of what their witnesses might say if asked questions about communications with Charles. Specifically, in regard to the support of Brevard College, caveators' proffer stated the following:
[Charles Pickelsimer's children, Chuck and Lynn Williams, would testify] that they had multiple oral communications with Mr. Pickelsimer during which he stated his displeasure with Brevard College, the decisions of the administration, and lack of oversight of its trustees. Charles III recalls conversations with Mr. Pickelsimer after he resigned from the college board during which he stated that that [sic] he was "so disgusted with the college he would not give them a God damned dime" (or words to that effect). These conversations continued into the late 2000s. Mr. Pickelsimer was offended that the "Pickelsimer Memorial Garden" with reflecting pool and cross in front of the Jones Dormitory had been filled in and renamed the " 'McClarty Garden,' " with no substitute location to honor the family's past giving.
The trial court ruled that caveators would be allowed to testify regarding specific conversations with Charles about Brevard College as set forth in their proffer.
Lynn Williams thereafter testified in pertinent part:
A. [Charles Pickelsimer, Jr.] served on the board [of Brevard College] for a short time. And when he left the board, he left because he was disturbed by the lack of oversight in the spending. He felt that the college president-
...
*591 [Counsel for propounders]: Objection
The Court: Sustained.
...
Q. As it relates specifically to charitable giving after that, after he resigned and the reasons he told you why he resigned, did he tell you his views about charitable giving to Brevard College ?
A. Yes, he did.
...
He didn't feel too comfortable doing it.
*222 (Emphasis added). Lynn testified she was surprised to see that her father had included Brevard College as a beneficiary to his will. The discussions she had had with her father indicating his lack of any comfort with charitable giving to Brevard College had continued into the late 2000s.
Caveators contend that the trial court erred in excluding testimony explaining the reason for Charles' disenchantment with Brevard College, and that such exclusion was highly prejudicial. They assert that, in light of testimony about several meetings which occurred following the death of Ann Pickelsimer between Charles Pickelsimer and a former president of Brevard College and Kelso's testimony concerning Charles' desire to benefit Brevard College in his 2010 Will, this desire "represented a seismic shift in attitude toward Brevard College occurring in the summer of 2010[and] would be highly relevant to the level of influence being asserted by [the former President] in the weeks and months following Ann's death." Specifically, caveators contend that Lynn's excluded testimony concerning Charles' falling out with Brevard College would show that for decades Charles remained disturbed by the way the College was operated, "making it very unlikely he would have left his sizeable residual estate, including the 100 acre 'donut hole' property, to Brevard College unfettered[,] claiming he was 'closest' to Brevard College. This evidence goes directly to the 'extent' of the influence asserted by [former Brevard College President] on behalf of Brevard College."
We find this argument unpersuasive, mainly because the jury heard the gist of the testimony caveators now say was excluded. Where the trial court admitted testimony regarding the reason Charles removed himself from the Brevard College Board in the late 1980's, we fail to *592 see the merit in caveators' argument.[1] Further, Lynn testified regarding Charles' views on charitable giving to Brevard College, and why it was unlikely Charles would leave a sizeable, unrestricted residuary estate gift to the college. We do not agree that the admission of additional testimony regarding the reason Charles removed himself from the Brevard College Board in the late 1980's would have altered the jury's verdict. We note that caveators' proffer regarding Charles being offended that the former "Pickelsimer Memorial Garden" on the campus had been altered and renamed the " 'McClarty Garden,' " might have been relevant on the issue of why Charles may have been continually displeased with Brevard College; however, this portion of the proffer was not offered as testimonial evidence.
Caveators also contend that Charles' statement to his daughter Lynn during a discussion regarding a transfer of $12.9 million from his trust was improperly excluded. Lynn testified that upon learning her mother's diagnosis was terminal, she without telling Charles, transferred $12.9 million from Charles' trust to Ann's trust to avoid estate taxes. Caveators assert that the exclusion of Charles response to Lynn's attempt to discuss the transfer was highly prejudicial as it precluded the jury from hearing the caveator's version of Charles' comments that would have shed light on their relationship as well as Charles' mental condition. In the proffer of what caveators expected their witnesses would say when questioned, caveators proposed that Lynn and Chuck would testify that "they had oral communications with [Charles] on several occasions to tell him about the transfers after they were made but before April 19, 2010, but that he told them that he was 'not mentally up' for the discussion (or words to that effect)."
At trial, Lynn provided the following pertinent testimony:
Q. Since he lost all control of that money how did he come out better once it was transferred to your mother's trust than before you took it from him?
A. Because that transfer made his dream come true.
Q. So then you would have no problem discussing it with him in the eight weeks that transpired between early March and April 28th; correct?
*223 *593 A. My father was not well and he was in deep grief. I said, "I have business things I need to talk to you about, daddy." And he said, "I am not mentally up for it right now."
Lynn's testimony appears to be in accordance with the proffer that caveators anticipated she and/or Chuck would state if questioned about the transfer of $12.9 million from Charles' trust account to Ann's trust account. Therefore, we find no merit to caveators' contention that the trial court erred by excluding testimony as to Charles' statements that would shed light on his relationship with his children or on his mental condition where in fact the challenged statement "I am not mentally up for it right now" was not excluded. Accordingly, we find caveators suffered no prejudicial error and overrule caveators' argument that the trial court erred in excluding testimony of statements made by Charles under the Dead Man's Statute.
II
Next, caveators contend that the trial court erred in entering a directed verdict and judgment for devisavit vel non on the issue of whether "Propounders' Exhibit 2" constituted the last will and testament of Charles Pickelsimer, Jr. Specifically, caveators contend that no exhibit was identified as Propounders' Exhibit 2 in the record. As such, caveators contend that the trial court erred in entering a directed verdict concluding that Propounders' Exhibit 2 was executed according to the law for a validly executed will and that the trial court erred in entering judgment on the jury verdict where the jury returned a verdict on the validity of "Propounders' Exhibit 2" which does not appear in the record. On this basis, caveators contend they are entitled to a new trial. We disagree.
We review the number, form and phraseology of the issues presented to the jury for abuse of discretion. Griffis v. Lazarovich, 161 N.C.App. 434, 440, 588 S.E.2d 918, 923 (2003).
In their brief to this Court, caveators acknowledge that
a document purporting to be Charlie's 2010 Will was included in a notebook of documents which was received into evidence as "Courtroom Exhibit 1." ... It is also true that a document dated 17 August and testified to as a "pourover last will and testament" was identified as "Exhibit 2, Tab 2".... A "Courtroom Exhibit 2" notebook was also identified.... In "Courtroom Exhibit 1," there is a *594 document labeled "Defendant's Exhibit 2" which purports to be a Last Will and Testament signed on 17 August 2010.
The record reflects that during trial and prior to the testimony of Kelso, the attorney who drafted the 2010 will, counsel for propounder Albertson announced to the trial court that
we have prepared exhibit notebooks with the exhibits that the caveators have agreed are authenticated for the purposes of the pretrial order. And we propose to give those to the jurors at the beginning of Mr. Kelso's deposition.... [W]e can direct them to the right tab as we go and move to admit as we go with the Court's permission.
The trial court stated that "I appreciate you all agreeing on the notebooks and all of the documents being admitted. That is going to move things along a lot. And you don't have to worry about making sure you've identified everything and you proffered it the proper way. You've all agreed." Counsel for Albertson clarified that each exhibit in the notebook was internally numbered. The trial court stated that while the exhibits were to be internally numbered, the notebook itself would be referred to as Courtroom Exhibit 1.
[Propounder Counsel]: Your Honor, I don't know that I ever formally moved to admit the evidence, the exhibits that I introduced.
The Court: Are you talking about Exhibit 1 and all of the contents?
[Propounder Counsel]: Yes. Everything.
The Court: I understood that there was an agreement that they would be.
[Caveator Counsel]: Yes.
The Court: And they are. We all had a discussion about it.
*224 Before the jury, Debra Cooper, Charles Pickelsimer's former secretary, was asked to identify Exhibit 2 at Tab 2 in the notebook provided. She acknowledged that the document was entitled "the Last Will and Testament of Charles W. Pickelsimer, Jr." Moreover, the record on appeal provides that within the contents of Courtroom Exhibit 1 (the notebook) is contained Exhibit 2-the "Last Will and Testament of Charles W. Pickelsimer, Jr., dated 17 August 2010."
*595 At the close of the evidence, the jury returned verdicts finding that the execution of Propounders' Exhibit 2 was not procured by undue influence. The jury further found that "Propounders' Exhibit 2 and every essential part of it, [was] the last will and testament of Charles W. Pickelsimer, Jr." On 6 December 2013, the trial court entered judgment in accordance with the jury verdicts and ordered that "[t]he execution of the document, entitled 'Last Will and Testament of Charles W. Pickelsimer, Jr.,' dated 17 August 2010, marked as propounders' Exhibit 2 at trial was not procured by undue influence" and "is hereby admitted to probate in solemn form."
Caveators now argue that the record fails to contain a paper writing marked as "Propounders' Exhibit 2" and that the trial court erred in entering judgment in accordance with the jury verdict. Caveators contend the jury entered devisavit vel non based on a "Propounders' Exhibit 2" which does not appear in the record. At oral argument, caveators extended this argument pointing out that this was an in rem proceeding: it was not about the parties but, rather, the will of Charles Pickelsimer, Jr. The burden of proof to establish the validity of the will was on the propounders, and caveators could not waive the issue of validity. By tasking the jury with determining whether Propounders' Exhibit 2 was the last will and testament of Charles Pickelsimer, Jr., and entering judgment in accordance with the jury's verdict in the affirmative, caveators claim that an ambiguity was created. Caveators assert that as no exhibit was entered into the record as "Propounders' Exhibit 2," the Clerk of Court cannot be certain as to which document the jury found to be Charles Pickelsimer, Jr.'s last will and testament. We find this argument unpersuasive.
It is an elementary principle of law that the trial judge must submit to the jury such issues as are necessary to settle the material controversies raised in the pleadings and supported by the evidence. The number, form and phraseology of the issues lie within the sound discretion of the trial court, and the issues will not be held for error if they are sufficiently comprehensive to resolve all factual controversies and to enable the court to render judgment fully determining the cause.
Griffis, 161 N.C.App. at 440, 588 S.E.2d at 922-23 (citations and quotations omitted).
Here, propounders, caveators, and the trial court agreed to compile exhibits into a notebook referred to as Courtroom Exhibit 1. The record *596 reflects that Charles Pickelsimer, Jr.'s Last Will and Testament dated 17 August 2010, included in Courtroom Exhibit 1, was marked for identification by propounders and referred to by propounders as Exhibit 2. Propounders moved that all exhibits included in Courtroom Exhibit 1 be admitted in evidence, and they were admitted by the trial court with no objection by caveators. Neither during the course of the trial, the charge conference, nor following the jury instruction[2] did caveators raise an objection to the referral of Charles Pickelsimer, Jr.'s 2010 Will as Propounders' Exhibit 2.
As the phraseology of the issues presented in this caveat proceeding was sufficiently accurate to resolve any factual controversies and enabled the trial court to fully render judgment in the cause, the trial court did not err or abuse its discretion in referring to *225 propounders' proffered "Last Will and Testament of Charles W. Pickelsimer, Jr., dated 17 August 2010" as "Propounders Exhibit 2" on the jury verdict sheet.
Even if we were to accept caveators' contention that an ambiguity was created where the jury verdict sheet referenced Propounders' Exhibit 2 while no exhibit marked as Propounders' Exhibit 2 was entered into the record, we note that an exhibit marked as "Exhibit 2" was introduced by propounders as their exhibit and was entered in the record. Further, we note that the trial court's judgment clearly resolves any perceived ambiguity.
1. The execution of the document entitled "Last Will and Testament of Charles W. Pickelsimer, Jr.," dated 17 August 2010, marked as Propounders' Exhibit 2 at trial, was not procured by undue influence.
2. The document dated 17 August 2010, marked as Propounders' Exhibit 2 at trial, propounded for probate, and every part thereof, is the Last Will and Testament of Charles W. Pickelsimer, Jr. and it is hereby admitted to probate in solemn form.
*597 [T]he existence of an ambiguity in a court order is ... a question of law, but resolution of the ambiguity is a question of fact. See Potter v. Hilemn Labs., Inc., 150 N.C.App. 326, 331, 564 S.E.2d 259, 263 (2002) (Trial court's determination of whether the language in a consent judgment was ambiguous is a question of law). The existence of an ambiguity in the orders is a question of law to be decided by the judge and is not a question of fact for the jury.
Emory v. Pendergraph, 154 N.C.App. 181, 185, 571 S.E.2d 845, 848 (2002).
Therefore, we hold that any ambiguity created in this case was resolved by the trial court as a matter of law. See id. As the assertions of the parties appearing before the trial court made clear, the Last Will and Testament of Charles W. Pickelsimer, Jr., dated 17 August 2010 is Propounders' Exhibit 2. Accordingly, caveators' arguments on these issues are overruled, and the judgment of the trial court is affirmed.
NO PREJUDICIAL ERROR; NO ERROR.
Judges STEPHENS and DIETZ concur.

Lynn Williams testified that "Charles served on the board [of Brevard College] for a short time. And when he left the board, he left because he was disturbed by the lack of oversight in the spending. "

In his charge to the jury, the trial court specifically stated:
The Propounders seek to establish the writing as a valid will. The Caveators contest that this ... is a valid will for certain legal reasons, which I will discuss throughout my following instructions.
The writing at issue was marked as Propounders' Exhibit No. 2, and it's in your white book as Exhibit No. 2, and is dated August 17, 2010.
(Emphasis added).