IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-345

Filed: 21 April 2020

Buncombe County, No. 17 E 608

IN THE MATTER OF THE ESTATE OF PAUL WILLIAM MALLIE WORLEY, a/k/a
Paul Worley, Deceased.

BRENDA WORLEY MOSS, BARBARA WORLEY INGLE, and LESTER WORLEY,
Petitioners,

v.

PATRICIA SPROUSE, DARLENE WATERS, LAVONDA GRIFFIN, DANNY
MATHIS, and JORDAN HAWKINS, Respondents.

Appeal by Respondents from order entered 5 December 2018 by Judge Bradley
B. Letts in Buncombe County Superior Court. Heard in the Court of Appeals 16
October 2019.

*Long, Parker, Payne, Anderson & McClellan, P.A., by Ronald K. Payne and
Thomas K. McClellan, for Petitioner-Appellee.*

*Frank G. Queen, PLLC, by Frank G. Queen, and Smathers & Smathers, by
Patrick U. Smathers, for Respondent-Appellant.*

DILLON, Judge.

This matter concerns the estate of Paul Worley, who died in 2017 unmarried
and without lineal descendants. Respondent Patricia Sprouse ("Ms. Sprouse" or
"Pat"), Mr. Worley's long-time companion, offered a certain document for probate
which she contends is Mr. Worley's will and which leaves her his entire estate. She

appeals the Superior Court's order concluding that this document "does not constitute a Last Will and Testament of [Mr. Worley]" and revoking the Certificate of Probate and Order Authorizing Issuance of Letters. After careful review, we vacate this order and remand for further proceedings.

## I. Background

Mr. Worley died on 14 January 2017. He had no spouse or children but was survived by three of his four siblings.

Petitioners are Mr. Worley's three surviving siblings (the "Siblings"). Ms. Sprouse is Mr. Worley's alleged partner for the last thirty-six (36) years of Mr. Worley's life. The other Respondents are the descendants of Mr. Worley's sibling who predeceased him.

Following Mr. Worley's death, Ms. Sprouse offered a short document for probate, a document which purports to be in Mr. Worley's handwriting, which read:

> March 13, 2001
> Last Will of Paul Worley:
>
> I want Pat [Sprouse] to have the power of attorney of all that I own. That means land, cars, money, guns, clothing and anything else!
>
> I don't want Grace Price Worley to have none.
>
> Signed March 13, 2001  9:00pm
> Paul Worley

(This document is hereinafter referred to as the "Holographic Document.")[1]

The Clerk admitted the Holographic Document to probate. However, while the matter was pending before the Clerk, the Siblings filed a petition, commencing an estate proceeding, seeking an order revoking the probate of the Holographic Document. In their petition, the Siblings contended that the Holographic Document is not Mr. Worley's will. All interested parties were served in accordance with Rule 4 of our Rules of Civil Procedure. *See* N.C. Gen. Stat. § 28A-2-6(a) (2017).

After a hearing on the matter, the Clerk dismissed the Siblings' petition, concluding that she lacked subject-matter jurisdiction to determine whether the language in the Holographic Document exhibits testamentary intent. The Clerk's dismissal order was appealed to the Superior Court.

After a hearing on the matter, the Superior Court concluded that the Holographic Document was not Mr. Worley's will and directed the Clerk on remand to revoke probate of the Holographic Document.

Ms. Sprouse timely appealed that order to this Court.

## II. Analysis

The Superior Court held, as a matter of law, that the Holographic Document was not Mr. Worley's last will because it "makes no testamentary disposition of [Mr.

---

[1] The phrase "Witness by Carolyn S. Surrett" in another's handwriting appears below Paul Worley's purported signature.

Worley's] property [but] merely appoints [Ms.] Sprouse as Power of Attorney," an appointment which lost all effect upon Mr. Worley's death.

This appeal raises a number of interesting issues. We address these issues in turn below.

### A. Clerk's Jurisdiction vs. Superior Court's Jurisdiction

The parties raise issues concerning the respective jurisdictions of the Clerk and of the Superior Court in considering the Siblings' petition to revoke probate. For the following reasons, we conclude that the Clerk properly determined that she lacked jurisdiction and that the matter was properly brought up before the Superior Court.

In some estate proceedings, there is no dispute as to the validity of the document offered to probate as being the will of the decedent. Rather, in those proceedings, the dispute concerns the interpretation of the will.

But in other estate proceedings, interested parties dispute the testamentary value of the document being offered for probate. In such cases, the matter must be transferred to Superior Court to resolve whether the document is, in fact, the will of the decedent. Specifically, our General Assembly directs that "[u]pon the filing of a caveat *or raising of an issue of devisavit vel non*, the clerk shall transfer the cause to the superior court, and the matter shall be heard as a caveat proceeding." N.C. Gen. Stat. § 28A-2A-7(b) (emphasis added).

"*Devisavit vel non*" is a Latin phrase meaning "he devises or not," *In re Estate of Pickelsimer*, 242 N.C. App. 582, 587, 776 S.E.2d 216, 219 (2015), and, when invoked, raises an issue "of whether or not the decedent made a will and, if so, whether [the document] before the court is that will." *In re Will of Hester*, 320 N.C. 738, 745, 360 S.E.2d 801, 806 (1987).

In this matter, the Siblings did not file a formal caveat with the Clerk. However, they did otherwise raise the issue of *devisavit vel non* in their petition, contending that the Holographic Document is not Mr. Worley's will. Therefore, since the Siblings raised the issue of *devisavit vel non* in their petition, the Clerk was correct in concluding that she lacked jurisdiction to decide the issue, and the matter was properly brought before the Superior Court.

B. Superior Court's Exercise of Jurisdiction in Deciding Testamentary Intent

Having determined that the matter was properly before the Superior Court, we now address whether that Court properly determined, *as a matter of law*, that the Holographic Document should not be probated, without submitting any issue to a jury. As explained below, we conclude that there is an issue of material fact which the Superior Court should have submitted to a jury and that, therefore, the Superior Court erred in deciding the issue as a matter of law.

Our Supreme Court recognizes the authority of a superior court judge to decide the issue of *devisavit vel non*, without submitting the issue to a jury, when there is no material issue of fact raised:

> Where, as here, propounder fails to come forward with evidence from which a jury might find that there has been a testamentary disposition it is proper for the trial court under Rule 50 of the Rules of Civil Procedure to enter a directed verdict in favor of the caveators and adjudge, as a matter of law, that there can be no probate.

*In re Will of Mucci*, 287 N.C. 26, 36, 213 S.E.2d 207, 214 (1975).[2] Accordingly, we conclude that a judge of the Superior Court may determine that a document is not a decedent's will *as a matter of law* in the appropriate case.

In this case before us today, the Superior Court decided, as a matter of law, that the Holographic Document was not Mr. Worley's will, reasoning that the language Mr. Worley used fails to accomplish any testamentary purpose. Indeed, the Holographic Document merely appoints "Pat" as Mr. Worley's "power of attorney"

---

[2] *See In re Will of Jones*, 362 N.C. 569, 573-74, 669 S.E.2d 572, 576 (2008) (suggesting that summary judgment on the issue of *devisavit vel non* is proper where there is no issue of material fact on the issue). *See also In re Will of McNeil*, 230 N.C. App. 241, 243, 749 S.E.2d 499, 501-02 (2013) (recognizing the propriety of summary judgment on the issue of *devisavit vel non*).

Some older cases from our Supreme Court held that the issue of *devisavit vel non had to be* decided by a jury and could *never be* decided by the judge as a matter of law. *See In re Ellis' Will*, 235 N.C. 27, 32, 69 S.E.2d 25, 28 (1952) (caveat proceeding "must proceed to judgment, and a motion for judgment as of nonsuit, or for a directed verdict, will not be allowed."). However, it was held in other older cases that a judge could determine the validity of a document as being a will, as a matter of law. *See In re Johnson's Will*, 181 N.C. 303, 306, 106 S.E. 841, 842 (1921) (holding that "[t]he refusal to submit an issue as to the [testamentary] intention of the deceased was not erroneous, as this intent must be gathered from the letter and the surrounding circumstances, and a finding of the jury contrary to the language used in the letter could not be sustained.").

over his property, a power which by law ceases when Mr. Worley dies. *See* N.C. Gen. Stat. § 32C-1-110(a)(1) (2017) (stating that "[a] power of attorney terminates when . . . [t]he principal dies.").

The Siblings contend that the Superior Court got it right (in which case they would stand to inherit as Mr. Worley's heirs at law), citing "[t]he most instructive case" on point as being *In re Seymour's Will*, 184 N.C. 418, 114 S.E. 626 (1922). *Seymour's Will* involved a document whereby the decedent appointed her husband as her power of attorney and contained language indicating that the decedent intended the document to be her last will and testament. *Id.* at 418, 114 S.E. at 626. We agree with the Siblings that *Seymour's Will* is highly instructive; however, we do not agree that *Seymour's Will* necessarily requires the result reached by the Superior Court.

The document offered for probate in *Seymour's Will* was signed by Mrs. Seymour and, like the Holographic Document here, contains language appointing someone as a "power of attorney," stating:

> This is to certify that I, [Mrs. Seymour] do this 26 July 1921, invest my husband, [ ], with full power of attorney over [all of my property] for the purpose of acting for me in all business matters[.]
>
> This also constitutes my last will.

*Id.* at 418, 114 S.E. at 626. The Superior Court determined as a matter of law that no part of the two-sentence document operated as a will, a determination which was affirmed by our Supreme Court. *Id.* at 421, 114 S.E. at 628.

Our Supreme Court held that the first sentence did not operate as a will. *Id.* at 420-21, 114 S.E. at 627. In reaching that conclusion, the Supreme Court was *not* so troubled by Mrs. Seymour's use of the words "power of attorney," recognizing that the words used by a testatrix need not be "technically appropriate" to be legally effective in creating a *testamentary* disposition of one's property:

> It is true that no particular form of words is necessary to express an intention to dispose a person's property after his death, *and the use of inartificial language will not be permitted to defeat an apparent intention expressed in an instrument* which [otherwise] complies with the formalities of law. . . . This [intention] may be manifested by an intention [that the power granted or disposition made not] to take effect in any way until the testator's death.

*Id.* at 420, 114 S.E. at 627 (emphasis added). Rather, our Supreme Court so held because the words used by Mrs. Seymour clearly evinced an intent that the power granted would take effect immediately, during her lifetime:

> One of the essential elements of a will is a disposition of property *to take effect after the testator's death. . . .*
>
> [However,] a written instrument to be a will must make some positive disposition of the testator's property [or make an appointment of an executor or guardian of the testator's minor children], and if it fails to do this, it is not a will and testament. . . .
>
> If under the instrument any interest vests, or if such interest fails to vest merely because of lack of delivery of the instrument, then it is not a will. In other words, if any interest either vests or is capable of vesting prior to the death of the maker, the instrument is not a will.

*Id.* at 419-20, 114 S.E. at 627.

Our Supreme Court further reasoned that the second sentence – "This also constitutes my last will" – likewise was not effective in creating a valid will, notwithstanding that Mrs. Seymour may have so intended. *Id.* at 420-21, 114 S.E. at 627-28. The Court reasoned that the word "This" could, at best, refer back to the first sentence, but that, a document titled a "will" of a maker, which only makes dispositions taking effect before the maker's death, does not create a will:

> The clause "This also constitutes my last will" does not operate as a disposition of the maker's property to take effect after her death, because the word "this" refers to the instrument in controversy, which is merely a power of attorney relating to the management of her property *in her lifetime*. Probably Mrs. Seymour intended to make a will and thought she had accomplished her purpose; but a will cannot be established by merely showing an intent to make one. Nor can this conclusion in any wise be affected by evidence offered to show that the alleged testatrix said "she wanted Fred to have what she had," and treated the instrument as her will. . . .
>
> It is a settled principle that the construction of a will must be derived from the words in it, and not from extrinsic averment."

*Id.* at 421, 114 S.E. at 627-28 (emphasis added) (internal quotation marks omitted).

Ultimately, our Supreme Court concluded that there was no need to submit to a jury whether Mrs. Seymour *intended* the document as a will: even if a jury so determined, such determination would be meaningless to the case, as the language used was unambiguous in granting the power to her husband during her lifetime. *See*

*id.* at 421, 114 S.E. at 627-28 (noting that "[p]robably Mrs. Seymour intended to make a will and thought she had accomplished her purpose; but a will cannot be established by merely showing an intent to make one.").

In the present case, we conclude that a jury *could* reasonably infer from the language that Mr. Worley intended the document to be his will. For instance, the Holographic Document is titled "Last Will of Paul Worley." We further conclude that, unlike in *Seymour's Will,* it would not be a waste of time to submit the issue to a jury, as the language in the Holographic Document is sufficiently ambiguous to allow a construction to effectuate a testamentary transfer of property.

If the jury determines that Mr. Worley drafted the document with *animo testandi,* that is, with testamentary intent, *see In re Will of Mucci*, 287 N.C. at 30, 213 S.E.2d at 210, then it could reasonably be construed *from the language used in the Holographic Document* and perhaps from other competent evidence presented that Mr. Worley intended to grant "Pat" with some power over his property to take effect only after he died. *See Institute v. Norwood*, 45 N.C. 65, 69 (1852) (internal quotation marks omitted) (explaining that a court, "under the maxim *ut res majis valeat quam pereat* will try to give" meaning to every clause in a will). For instance, the language could be construed an expression of intent to grant Pat with a power of appointment over his property at his death, pursuant to Chapter 31D of our General Statutes. *See* N.C. Gen. Stat. § 31D-2-201 cmt. (2017) (recognizing the appropriateness of

conferring a power of appointment over one's property in a will). Indeed, one could reasonably construe from the language employed by Mr. Worley, presumably a non-lawyer, that he wanted Pat to have absolute discretion to dispose of his estate in any way she saw fit, so long as she did not give any of his estate to "Grace Price Worley."[3] Alternatively, it might be reasonable to construe the language as an expression of intent to grant Pat with the power of an executrix over his estate. Or, it could be determined that the language could be subject to reformation pursuant to N.C. Gen. Stat. § 31-61 (2017) to change to language altogether to conform the language to Mr. Worley's true intent.[4] (We do not express any opinion regarding any of these or other possible interpretations. We simply express that there are ways to construe the Holographic Document to give it testamentary meaning and effect, should a jury determine the Document to be a will.)

### III. Conclusion

We, therefore, reverse the Superior Court's order directing that probate be revoked, and we remand the matter for further proceedings. There is an issue of fact

---

[3] Of course, it could be reasonably construed that Mr. Worley did not intend to limit Pat's authority in the sentence regarding Grace, but that he was merely expressing a non-binding desire to Pat that Pat not give any of the estate to Grace.

[4] It has long been the law of this State that a "patent" ambiguity could not be explained by evidence outside the language of the will, and if there is no way to give language that is "patently" ambiguous any meaning, then the language must be ignored. *See Institute*, 45 N.C. at 68 (explaining the difference between patent and latent ambiguities). However, with the adoption of N.C. Gen. Stat. § 31-61 by our General Assembly, courts may consider any clear and convincing evidence to decipher language that is even patently ambiguous, so long as the language is determined to be ambiguous in the first instance. That is, Section 31-61 does not empower a court to reform unambiguous provisions in a will.

as to whether Mr. Worley intended the Holographic Document to be his will and, otherwise, whether the Document meets the other statutory requirements of a holographic will. The issues of *devisavit vel non* are for a jury to decide, not the Superior Court as a matter of law at this point.

Should it be determined that the Holographic Document is not Mr. Worley's valid will, then the Superior Court shall direct the Clerk to revoke probate. However, should it be determined that the Holographic Document does meet the statutory requirements of a holographic will (assuming those requirements are put at issue) and that the document was executed with testamentary intent and is otherwise valid, this estate proceeding shall continue, including the resolution as to the construction that is to be given to the language contained in the Holographic Document.

REVERSED AND REMANDED.

Judges STROUD and BERGER concur.