IN THE MATTER OF THE WILL OF JOHN R. JARVIS, Deceased

No. 310PA92

(Filed 2 July 1993)

1. **Wills § 3 (NCI3d)— signing of will—testator assisted by attorney who also witnessed—directed verdict for propounder—no error**

The trial court correctly directed a verdict for the propounders on the issue of whether a will's execution met the requirements of N.C.G.S. § 31-3.3 where the testator, Mr. Jarvis, suffered a stroke in 1970 which rendered him partially paralyzed; he was right-handed and the stroke left that hand useless and his walking impaired; he was able to articulate only yes or no; he died in 1986 leaving a will dated 1977; Jarvis' attorney testified that Mr. and Mrs. Jarvis came to his office one or two weeks prior to the execution of the document; the attorney advised them as to a will and they authorized him to draft a document reflecting their wishes; when the Jarvises returned to his office, the attorney directed them to read the draft of the will; after Mr. Jarvis indicated that he had done so; the attorney read the document to him item by item and asked whether this was what he intended to do and whether

IN RE WILL OF JARVIS

[334 N.C. 140 (1993)]

he was satisfied; Jarvis indicated his assent to each item and affirmed that this was exactly what he wanted to do; the attorney called in his son, a law student, and asked Jarvis if the document he had just read was his Last Will and Testament and whether Jarvis wanted him and his son to be witnesses to the will; Jarvis again assented; the attorney asked whether Jarvis wanted the attorney to sign Jarvis' name to the will; Jarvis said that he did, then went around the attorney's desk, grasped the pen firmly in his left hand, and, guided by the attorney's hand on his, made his mark; the attorney then signed Jarvis' name on each page where Jarvis had made his mark; and the attorney and his son then signed as witnesses. Although caveators argue that the attorney's assisting Jarvis to form his mark and signing Jarvis' name beside each mark disqualified him as a witness, the validity of an instrument is not affected by the testator's receiving physical assistance in making his mark. Nothing in Chapter 31 indicates that a person assisting the testator either in forming his mark or by signing for him at his direction is thereby disqualified as a witness.

Am Jur 2d, Wills § 301.

2. **Wills § 21.4 (NCI3d) — execution of a will — evidence of undue influence — insufficient**

The trial court correctly directed a verdict for the propounders on the issue of whether a signature on a will was obtained by undue influence where the caveators did not identify the individual who allegedly asserted the invidious influence nor suggest how the manner in which the testator signed the document purporting to be his will manifested the intentions of anyone other than the testator himself.

Am Jur 2d, Wills § 479.

3. **Wills § 22 (NCI3d) — execution of a will — mental capacity — directed verdict improper**

The trial court should not have granted a directed verdict for propounders on the issue of testamentary capacity where the testimony of the testator's attorney, which recounted the circumstances under which the testator read and ultimately signed the will, tended to show that he had the mental capacity to make a will but other evidence showed that he did not. Whether the caveator's witnesses were credible and whether

IN RE WILL OF JARVIS

[334 N.C. 140 (1993)]

the evidence was sufficient to rebut the presumption of testamentary capacity were questions for the jury.

**Am Jur 2d, Wills §§ 70, 106, 151, 164.**

Justice PARKER did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31(a) of a published decision of the Court of Appeals, 107 N.C. App. 34, 418 S.E.2d 520 (1992), affirming a judgment entered 20 December 1990 by Lamm, J., in Superior Court, Madison County, directing a verdict for the propounders of a will. Heard in the Supreme Court 11 May 1993.

*Morris and Morris, by William C. Morris, Jr., for propounder-appellees Mozelle Jarvis and Jack M. Jarvis.*

*Roberts Stevens & Cogburn, P.A., by Max O. Cogburn and Vernon S. Pulliam, for caveator-appellants Kenneth R. Jarvis and James R. Jarvis.*

WHICHARD, Justice.

This case presents the question whether the trial court properly directed a verdict for the propounders of a will on the issues of improper execution, testamentary capacity, and undue influence. We hold that the trial court properly directed verdicts as to the issues of improper execution and undue influence, but that a directed verdict on the question of whether the testator had the mental capacity to make a will was improper.

John R. Jarvis, the testator, suffered a stroke in 1970, which rendered him partially paralyzed. Jarvis was right-handed, and the stroke left that hand useless and his walking impaired. Jarvis' speech was also affected: after the stroke he was able to articulate only "yes" and "no." Jarvis died in December 1986. Probate of a paper writing dated 6 July 1977 purporting to be Jarvis' Last Will and Testament was opposed by the older two of Jarvis' three sons on grounds of improper execution under N.C.G.S. § 31-3.3, the testator's mental incapacity, and undue influence in obtaining the testator's signature.

After the presentation of evidence by both the propounders and the caveators, the trial court denied the caveators' motion

for directed verdict on the issue of failure to prove due execution of the paper writing, and it granted directed verdict for propounders on the issues of due execution, mental capacity, and undue influence. The Court of Appeals affirmed. *In re Will of Jarvis*, 107 N.C. App. 34, 418 S.E.2d 520 (1992). On 7 January 1993 this Court granted the caveators' petition for discretionary review.

A motion for directed verdict under N.C.G.S. § 1A-1, Rule 50 (1990), presents the question whether as a matter of law the evidence is sufficient to entitle the nonmovant to have a jury decide the issue. *E.g., United Labs v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988). In passing on this motion the trial court must consider the evidence in the light most favorable to the nonmovant, resolving all conflicts in the evidence in his favor and giving him the benefit of all favorable inferences that may be reasonably deduced from the evidence. *Id.; Anderson v. Butler*, 284 N.C. 723, 730-31, 202 S.E.2d 585, 590 (1974). If the evidence is sufficient to support each element of the nonmovant's case, the motion for directed verdict should be denied. *E.g., Braswell v. Braswell*, 330 N.C. 363, 367, 410 S.E.2d 897, 899 (1991), *rehearing denied*, 330 N.C. 854, 413 S.E.2d 550 (1992). The credibility of the testimony is for the jury, not the court, and a genuine issue of fact must be tried by a jury unless this right is waived. *Cutts v. Casey*, 278 N.C. 390, 421, 180 S.E.2d 297, 314 (1971).

[1] Caveators first argue that the circumstances of the testator's signing the document failed to comport with the requirements of N.C.G.S. § 31-3. The document was drafted and witnessed by Jarvis' attorney. He testified that Mr. and Mrs. Jarvis came to his office one or two weeks prior to the execution of the document, seeking advice about executing a will. The attorney advised the Jarvises as to what he would recommend for them, and they authorized him to draft a document reflecting their wishes. When the Jarvises returned to his office on 6 July, the attorney directed them to read over the draft of the will he had prepared for Mr. Jarvis. When Mr. Jarvis indicated he had done so, the attorney read the document to him, item by item, and asked whether this was what he intended to do and whether he was satisfied. Jarvis indicated his assent to each item and affirmed that what he had heard the attorney read was exactly what he wanted to do. The attorney called in his son, a law student, and asked Jarvis if the document he had just read was his Last Will and Testament and whether Jarvis wanted him and his son to be witnesses to the will. Jarvis

again assented. The attorney then asked Jarvis whether he wanted him to sign Jarvis' name to the will. Jarvis said that he did. Jarvis then came around behind the attorney's desk, grasped the pen firmly in his left hand and, guided by the attorney's hand on his, made his mark. The attorney then signed Jarvis' name on each page where Jarvis had made his mark. The attorney and his son then signed as witnesses.

First, the caveators argue that the attorney's assisting Jarvis to form his mark and signing Jarvis' name legibly beside each mark disqualified him as a witness and that the will was therefore invalid for lack of two attesting witnesses. As the Court of Appeals noted, the validity of an instrument is not affected by the testator's receiving "physical assistance in making his mark." *In re Will of Jarvis*, 107 N.C. App. at 41, 418 S.E.2d at 524 (quoting *In re Will of King*, 80 N.C. App. 471, 476, 342 S.E.2d 394, 396, *disc. rev. denied*, 317 N.C. 704, 347 S.E.2d 43 (1986)). *See also In re Will of Knowles*, 11 N.C. App. 155, 180 S.E.2d 394 (1971) (physically incapacitated testator placed hand on pen while minister made his mark). The validity of the signature does not depend upon the testator's making his mark independently. Indeed, the statute expressly permits a testator not to sign at all, but to have "someone else" sign his name "in [his] presence and at his direction." N.C.G.S. § 31-3.3(b) (1984); *In re Will of Williams*, 234 N.C. 228, 234-35, 66 S.E.2d 902, 906 (1951). "The purpose of requiring the testator to sign his name is to eliminate, as far as possible, the offering of forged or incomplete instruments for probate." 1 Norman A. Wiggins, *Wills and Administration of Estates in North Carolina* § 71, at 106 (2d ed. 1983). This purpose was met in the manner Jarvis signed the document in the presence of two witnesses. Nothing in Chapter 31 indicates that a person assisting the testator either in forming his mark or by signing for him at his direction is thereby disqualified as a witness to the document. The evidence is uncontradicted that Jarvis "signed" the document he published as his Last Will and Testament and that two witnesses present at that time attested the signature and also signed the document. We therefore hold that the Court of Appeals correctly affirmed the judgment of the trial court directing a verdict for propounders on the issue of whether the document's execution complied with the requirements of N.C.G.S. § 31-3.3.

[2] We find the record similarly devoid of evidence that Jarvis' signature was obtained by undue influence. "Undue influence" is

**IN RE WILL OF JARVIS**

[334 N.C. 140 (1993)]

"the substitution of the mind of the person exercising the influence for the mind of the testator, causing him to make a will which he otherwise would not have made." *In re Andrews*, 299 N.C. 52, 54, 261 S.E.2d 198, 199 (1980) (quoting *In re Will of Kemp*, 234 N.C. 495, 498, 67 S.E.2d 672, 674 (1951)). Although caveators contend certain factors "relevant on the issue of undue influence," *Andrews*, 299 N.C. at 55, 261 S.E.2d at 200, such as the testator's age and infirmity, were supported by the evidence, caveators neither identify the individual who allegedly asserted this invidious influence nor suggest how the manner in which the testator signed the document purporting to be his will manifested the intentions of anyone other than the testator himself. Again, we hold that the Court of Appeals correctly affirmed the trial court's directed verdict for propounders on this issue.

[3] Finally, the caveators argue that the trial court improperly directed a verdict for the propounders on the issue of the testator's testamentary capacity. A person has the mental capacity to make a will if he (1) comprehends the natural objects of his bounty, (2) understands the kind, nature and extent of his property, (3) knows the manner in which he desires his act to take effect, and (4) realizes the effect his act will have upon his estate. *In re Will of Shute*, 251 N.C. 697, 699, 111 S.E.2d 851, 853 (1960).

The testimony of the testator's attorney, which recounted the circumstances under which Jarvis read and ultimately signed his purported will, tended to show Jarvis' mental capacity to make a will at that time. Other evidence, however, viewed in the light most favorable to caveators, as required, tended to show he did not.

Charles Eatmon, the testator's cousin, testified he doubted whether John Jarvis had sufficient mental capacity to form a plan for the disposition of his property by will, and he continued:

I doubt if he was able to—to understand what it [his property] was. . . . Some things he could understand. He knew these roads, he could remember that. I think he knowed where his property was. But I don't believe he would have knowed what he was signing and what he wasn't.

Kenneth Jarvis, the testator's oldest son, testified that, in his opinion, his father did not have sufficient mental capacity to know the nature and extent of his property, and to know the natural objects of his bounty, and to form a plan for the disposition

IN RE WILL OF JARVIS

[334 N.C. 140 (1993)]

of the property. Asked whether "in general . . . your father didn't have enough sense to make a Will in 1977," Kenneth Jarvis responded, "I'm saying due to the stroke he did not." Kenneth Jarvis testified that his father

> did not know the extent of the value of the property. . . .
> He didn't know where all of his property was. . . . I have had him out driving him enough times that it is my opinion. I drove him all over everywhere, I don't think he knew where all his property was.

James Jarvis, the testator's older son, testified he did not think his father had sufficient mental capacity to know what property he had, and to know who his people were and to work out a plan to dispose of his property

> because he had some property on top of the hill. I was up there one day squirrel hunting and the fence looked like it had been moved. I went back down there and told him, I said, 'If you will get in the car I can drive you right straight to it.' [He] wasn't interested, he didn't want to do that.

Both sons testified that their father sometimes got "confused" when he was asked questions and said "yes" when he meant "no."

Edward Jarvis, a nephew, testified that he did not think his uncle had sufficient mental capacity to know what property he had, to know who his people were, and to form a plan for the disposition of his property. Edward Jarvis concluded, without objection, that his uncle "didn't have the mental capacity to make a Will." He testified:

> Because he was like a kid, he didn't understand. . . . I knew him as well as anybody, and I couldn't get across to him on some things, and I couldn't understand him on some things. I don't know how that anybody could say that he was willing and able and wanted to do this, that and the other when—when nobody could understand him.

"The law presumes that a testator possessed testamentary capacity, and those who allege otherwise have the burden of proving by the preponderance or greater weight of the evidence that he lacked such capacity." *In re York's Will*, 231 N.C. 70, 70, 55 S.E.2d 791, 792 (1949). The evidence is to be considered in the light most favorable to the caveators, deeming their evidence to

**IN RE WILL OF JARVIS**

[334 N.C. 140 (1993)]

be true, resolving all conflicts in their favor, and giving them the benefit of every reasonable, favorable inference. *In re Andrews*, 299 N.C. at 62-63, 261 S.E.2d at 204.

> [I]t is the duty of the judge alone to decide legal questions presented at the trial, and to instruct the jury as to the law arising on the evidence given in the case; [and] it is the task of the jury alone to determine the facts of the case from the evidence adduced.

*In re Will of Bartlett*, 235 N.C. 489, 491, 70 S.E.2d 482, 485 (1952).

We hold that the foregoing caveators' evidence of the testator's mental incapacity after his stroke and at the time he executed his purported will was sufficient to withstand the propounders' motion for a directed verdict. Whether caveators' witnesses were credible and whether the evidence, viewed in the light most favorable to caveators, was sufficient to rebut the presumption of Jarvis' testamentary capacity, were questions for the jury, and the trial court erred in directing a verdict for propounders on this issue.

Accordingly, the decision of the Court of Appeals as to the issues of improper execution and undue influence is affirmed. The decision of the Court of Appeals as to the issue of testamentary capacity is reversed, and the case is remanded to the Court of Appeals for further remand to the Superior Court, Madison County, for trial on the issue of Jarvis' testamentary capacity.

AFFIRMED IN PART; REVERSED IN PART.

Justice PARKER did not participate in the consideration or decision of this case.