IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-384

Filed: 1 November 2016

Rutherford County, Nos. 15 JA 73-75

IN THE MATTER OF: J.R., A.R., K.R.

Appeal by respondent-mother from orders entered 4 January 2016 by Judge Randy Pool in District Court, Rutherford County. Heard in the Court of Appeals 10 October 2016.

> *Joshua G. Howell for petitioner-appellee Rutherford County Department of Social Services.*
>
> *The Tanner Law Firm PLLC, by James E. Tanner III, for respondent-appellant mother.*
>
> *Stephen M. Schoeberle for guardian ad litem.*

STROUD, Judge.

Respondent-mother appeals from orders adjudicating her minor children "Joe," "Amy," and "Karl"[1] (collectively "the children") abused and neglected juveniles. Respondent-mother argues that the trial court improperly denied her attempt to waive representation by counsel and represent herself. We affirm the orders.

On 18 June 2015, the Rutherford County Department of Social Services ("DSS") filed juvenile petitions alleging that the children were abused, neglected, and

---

[1] Pseudonyms are used to protect the identity of the minor children and for ease of reading.

dependent. The petitions detailed significant and repeated physical abuse by respondent-mother's boyfriend ("the caretaker").[2] Whenever the caretaker was drunk, he would punch the children, hit them with wooden objects, or choke them. At the time the petition was filed, Joe and Karl had visible injuries. The petition alleged that respondent-mother did not stop the abuse because the caretaker hit her as well, and she was scared of him. The trial court placed the children in nonsecure custody with DSS the same day.

The matter was called for an adjudication hearing on 26 October 2015. Prior to the hearing, respondent-mother and the caretaker made a joint motion to dismiss their court-appointed counsel and represent themselves. The caretaker informed the court that respondent-mother had filed a complaint against her counsel with the North Carolina State Bar. Respondent-mother also told the court that she had not seen the discovery in the case, making it impossible for her to rebut DSS's case. The caretaker then stated, "[t]he base fact of it, Your Honor, is that we choose to represent ourselves." He continued:

> She said that she was -- we both said to our attorneys when we got them that -- we give each other full disclosure to this case so that we can -- because I've done a little bit of -- I was pre-law in college, I ended up going into other things. But I was going to help her prepare, you know, to do research on the computer, look up statute 7B and get all the information.

---

[2] The caretaker was made a party to the adjudication due to the allegations made against him in the petition. *See* N.C. Gen. Stat. § 7B-401.1 (e) (2015).

> We don't want these attorneys, your Honor. We shouldn't
> be stuck with them.

The trial court then denied both motions, stating, "I think you both need representation. You have adequate representation."

The hearing was not completed, and the case was continued until 9 November 2015. Prior to resuming the hearing, both the caretaker and respondent-mother's respective attorneys moved to withdraw from representation. Respondent-mother's attorney pointed out that she was respondent-mother's second attorney: "She had a prior attorney who then filed a motion to withdraw and then I was appointed I think it was in August. But she will not talk to me without her boyfriend [the caretaker], you know, being present. And that creates obviously some issues with us."

In addition, the caretaker and respondent-mother each presented the court with signed waivers of their right to counsel. Respondent-mother addressed the court as follows:

> Yes. Well, I had asked when we began this in October that
> I could waive my right to counsel because that's what I was
> told by Steve up in your clerk's office.
>
> You said that I needed this attorney when I asked you for
> dismissal of my attorney for a waive of right. You said no,
> that I needed that. And since then I've found the North
> Carolina Statute 7B-1101.1(a), please see case number In
> the Matter of JKP, Court of Appeals 14-756, citation
> number 767 S.E.2d 119 (2014).
>
> For the record, Your Honor, I believe that my right was
> overridden by your statement and we had to proceed at

- 3 -

that time. I ask for a dismissal of counsel, I waive my right to him. I don't want him to represent me or speak for me.

The court again denied both motions from the bench:

> The motions of [the caretaker] and the respondent mother to be relieved -- have their counsel relieved and to be allowed to proceed representing themselves, self representation, is denied.
>
> The Court would make findings of fact the allegations in this case of abuse and neglect involve allegations of serious assault on the children that could and may very well give rise to criminal proceedings being brought against one or both of these individuals -- the respondent mother and [the caretaker].
>
> That if they were allowed to proceed without counsel, they may choose to testify themselves, which they have the right to do if they wish to, and any statements that they make could be used against them in criminal prosecution.
>
> And they do have the right, of course, the rights associated with any kind of criminal prosecution including rights to remain silent if they wish to exercise those.
>
> But pursuant to the statute the Court would find that the respondents have asked that they be allowed to represent themselves and that their attorneys be released. And the Court -- if the Court finds the person -- 7B-602(a)(1) states a parent qualifying for appointed counsel may be permitted to proceed without the assistance of counsel only after the Court examines the parent and makes findings of fact sufficient to show that the waiver is knowing and voluntary. The Court's examination shall be reported as provided in 7B-806.
>
> The Court would find that the parents have made a request to be allowed to proceed on their own without counsel and be self represented. The Court would find that

with pending criminal charges possible and maybe even likely that it would not be in their best interest to proceed without counsel.

And the Court would find that there would not be a knowing and voluntary waiver since they're not attorneys and are lay people and would not fully understand even the Court's directive as to what their rights may or may not be if they're proceeding representing themselves.

So, the Court will deny the request to release counsel.

The hearing then continued with both respondent-mother and the caretaker represented by their respective counsel.

On 4 January 2016, the trial court entered orders concluding that the children were abused and neglected. The court left the children in the custody of DSS, removed the caretaker as a party to the case, relieved DSS of its obligation to pursue reunification efforts with respondent-mother, and denied respondent-mother visitation. Respondent-mother filed a timely notice of appeal.[3]

Respondent-mother argues that the trial court erred by denying her request to waive counsel and represent herself. We disagree.

N.C. Gen. Stat. § 7B-602(a) provides that "[i]n cases where the juvenile petition alleges that a juvenile is abused, neglected, or dependent, the parent has the right to counsel and to appointed counsel in cases of indigency unless that person waives the

---

[3] The trial court permitted respondent-mother's counsel to withdraw on 10 December 2015, and respondent-mother filed the notice of appeal *pro se*.

right."  N.C. Gen. Stat. § 7B-602(a) (2015).  The statute further provides that "[a] parent qualifying for appointed counsel may be permitted to proceed without the assistance of counsel only after the court examines the parent and makes findings of fact sufficient to show that the waiver is knowing and voluntary."  N.C. Gen. Stat. § 7B-602(a1).  Respondent-mother contends that these statutory provisions create both a right to counsel and a "correlative . . . right to self-representation."  According to respondent-mother, when a parent asserts his or her right to self-representation, the trial court is required to examine the parent and also required to allow the parent to proceed *pro se* so long as the record reflects that the parent "was literate and competent, that she understood the consequences of the waiver, and that such waiver was a voluntary exercise of her own free will."

But respondent-mother's interpretation cannot be reconciled with the plain language of N.C. Gen. Stat. § 7B-602(a1).  That subsection clearly states that the trial court *may* allow the parent to proceed *pro se*, and it is well established that the use of the word "may" in a statute implies the use of discretion.  *See In re Hardy*, 294 N.C. 90, 97, 240 S.E.2d 367, 372 (1978) ("Ordinarily when the word 'may' is used in a statute, it will be construed as permissive and not mandatory.").  The discretionary nature of the trial court's decision is further supported by the history of Chapter 7B. Prior to 1 July 1998, adjudication hearings in abuse, neglect, and dependency cases were governed by N.C. Gen. Stat. § 7A-631, which stated:

"The adjudicatory hearing shall be a judicial process designed to adjudicate the existence or nonexistence of any of the conditions alleged in a petition. In the adjudicatory hearing, the judge shall protect the following rights of the juvenile and his parent to assure due process of law: the right to written notice of the facts alleged in the petition, the right to counsel, the right to confront and cross-examine witnesses, the privilege against self-incrimination, the right of discovery and all rights afforded adult offenders except the right to bail, *the right of self-representation*, and the right of trial by jury."

*Thrift v. Buncombe County DSS*, 137 N.C. App. 559, 561, 528 S.E.2d 394, 395 (2000) (quoting N.C. Gen. Stat. § 7A-631) (emphasis added). This statute was repealed, *see* 1998 N.C. Sess. Laws ch. 202, § 5, and replaced by N.C. Gen. Stat. § 7B-802, which provides: "The adjudicatory hearing shall be a judicial process designed to adjudicate the existence or nonexistence of any of the conditions alleged in a petition. In the adjudicatory hearing, the court shall protect the rights of the juvenile and the juvenile's parent to assure due process of law." N.C. Gen. Stat. § 7B-802 (2015). This Court previously concluded that the removal of the reference to the "privilege against self-incrimination" defeated a respondent's contention that the privilege was protected by the statute. *In re Pittman*, 149 N.C. App. 756, 761, 561 S.E.2d 560, 565 (2002). Using that same logic, by removing the language specifically requiring the trial court to protect the right of self-representation, the General Assembly also eliminated any statutory right to self-representation. Thus, we conclude that, contrary to respondent-mother's argument, N.C. Gen. Stat. § 7B-602(a1) does not

require the trial court to allow parents to waive counsel and represent themselves, but rather gives the court the *discretion* to do so.

Respondent-mother also asserts that she has a right to self-representation protected by the Sixth Amendment of the United States Constitution and Article I, Section 23 of the North Carolina Constitution, but the only cases cited by respondent-mother in support of her assertion discuss the right to self-representation in *criminal* cases.[4] Respondent-mother cites no cases, and we have found none, that suggest a parent has a constitutional right to self-representation in the context of an abuse, neglect, and dependency proceeding. In *In re Lassiter*, 43 N.C. App. 525, 259 S.E.2d 336 (1979), this Court held that parents do not have a constitutional right to counsel in termination proceedings:

> The termination of parental rights by the State invokes no criminal sanctions against the parent whose rights are so terminated. While this State action does invade a protected area of individual privacy, the invasion is not so serious or unreasonable as to compel us to hold that appointment of counsel for indigent parents is constitutionally mandated.

*Id.* at 527, 259 S.E.2d at 337. That decision was appealed to the United States Supreme Court, which left "the decision whether due process calls for the

---

[4] Respondent-mother cites *In re J.K.P.*, 238 N.C. App. 334, 336, 767 S.E.2d 119, 121 (2014), *disc. review denied*, __ N.C. __, 771 S.E.2d 314 (2015), in an attempt to support her argument, but that case dealt with whether the trial court properly allowed the respondent to proceed *pro se* in a termination proceeding in accordance with N.C. Gen. Stat. § 7B-1101.1 (a1) (2015), the companion statute to N.C. Gen. Stat. § 7B-602(a1). The *J.K.P.* Court never asserted there was a constitutional or statutory right to self-representation.

appointment of counsel for indigent parents in termination proceedings" for the trial court and held that "the trial court did not err in failing to appoint counsel for Ms. Lassiter." *Lassiter v. Department of Social Services*, 452 U.S. 18, 32, 33, 68 L. Ed. 2d 640, 652, 653 (1981). Since there is no per se constitutional right to counsel for parents, there can be no correlative constitutional right to self-representation. Indeed, the few courts in other jurisdictions that have considered the question of a parent's right to self-representation have concluded that such a right does not exist under the United States Constitution. *See In re A.H.L., III*, 214 S.W.3d 45, 52 (Tex. App. 2006) ("We likewise find that a right of self-representation is not a necessary component of a fair parental rights termination proceeding."); *In re Angel W.*, 113 Cal. Rptr. 2d 659, 665 (Cal. Ct. App. 2001) ("The Sixth Amendment does not apply in dependency proceedings so its structure cannot provide a basis for finding a correlative constitutional right of self-representation."). *But see Dane Cnty. Dep't of Human Servs. v. Susan P.S. (In re Sophia S.)*, 715 N.W.2d 692, 697 (Wis. Ct. App. 2006) (concluding that parents in termination proceedings have a right to self-representation under a provision of the Wisconsin Constitution which states that " '[i]n any court of this state, any suitor may prosecute or defend his suit either in his own proper person or by an attorney of the suitor's choice.' " (quoting Wis. Const. art. I, § 21(2)). We find the reasoning of these cases persuasive and similarly conclude

that there is no constitutional right to self-representation for a parent in an abuse, neglect, and dependency proceeding.

Having determined that the trial court was not required, either by statute or the Constitution, to allow respondent-mother to proceed *pro se*, we must still consider whether the court abused its discretion by denying respondent-mother's request. "Absent an abuse of discretion, we will not disturb the trial court's choice. An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." *In re Robinson*, 151 N.C. App. 733, 737, 567 S.E.2d 227, 229 (2002) (citations and quotation marks omitted). In this case, the court considered respondent-mother and the caretaker's motions to proceed *pro se* twice, once prior to the beginning of the hearing and a second time prior to the presentation of evidence on the second day of the hearing. The trial court denied the first motion by stating, "I think you both need representation. You have adequate representation." After the second motion, the trial court made more detailed findings in support of its decision. Specifically, the court found that respondent-mother was potentially facing criminal charges due to the abuse suffered by her children and that she would be unlikely to be able to protect her rights with regard to those criminal charges if she represented herself.

In addition, although the trial court did not explicitly say so, it is clear from the transcript that the court found respondent-mother's waiver was not knowing and

voluntary because she was highly influenced -- if not coerced -- by the caretaker, with whom she continued to live and whom the trial court determined was physically abusive to the juveniles as well as respondent-mother. Respondent-mother's attorney pointed out to the court that respondent-mother would not speak with him "without her boyfriend . . . being present. And that creates obviously some issues with us." Each time the waiver was brought up in court, the caretaker argued first as to why the court should grant both his request *and* respondent-mother's request to waive their right to a court-appointed attorney. The caretaker often spoke on behalf of both himself and respondent-mother, constantly using the pronoun "we." He noted, for example, that respondent mother filed a grievance against one of her prior attorneys where she wrote "six to seven pages of narrative . . . about reasons why she does not want to be represented by this man." Respondent-mother then followed the caretaker each time he brought up their request to waive the right to an attorney, making nearly identical arguments for waiving her right.

The trial court also had evidence of the extent of the caretaker's control over respondent-mother from her own submissions to the trial court. Respondent mother filed a long written statement with the trial court in which she described her history with her husband and the father of the juveniles, whom she alleges was physically abusive and addicted to alcohol and drugs. They and their extended families lived in the state of Washington. They separated in about 2012, and she claims that she had

been attempting to legally divorce him ever since but had been unable to because she could not find him to serve him.[5] Apparently at about the same time as the separation from her husband, she met the caretaker and shortly after, alleging fear for the children's safety, she decided to have the caretaker home-school three of her children. She, the caretaker, and the children then moved to North Carolina in 2013 to assist the caretaker's ailing father. She had become estranged from her parents and extended family in Washington. She repeatedly states her fervent desire to marry the caretaker, noting that "[e]ver since we first started texting scripture over 3 and a half years ago, he has been my best friend, my Love, and my strength in all situations." She describes how poorly behaved the children have been; explains away each of their injuries from the alleged physical abuse; and laments their lack of appreciation for being provided with "3+ meals a day, movies on the weekends, sweets once a week (only because they blew that themselves), time to 'play', and to enjoy living on top of a hill . . . in a beautiful home!" Of course, the children were also required to help maintain the "over 30 acres of [caretaker's] family land that needs attending to[.]" She notes that since the children pay no bills, it is "more than reasonable for them to live the life of a farmer, and to work hard."

Considering respondent-mother's written statements as well as the statements and behavior of both her and the caretaker in court, it is apparent that respondent-

---

[5] DSS did find and serve respondent-father in this case and he participated in the case to some extent, although he is not a party to this appeal.

mother was entirely under the control of caretaker and incapable of understanding the effect his behavior has had on her children. The court's findings from the bench reflect that it considered respondent-mother's situation and determined that self-representation was not in her best interests. We cannot say that this ruling was "so arbitrary that it could not have been the result of a reasoned decision," and accordingly, we do not disturb it. The adjudication and disposition orders are affirmed.

AFFIRMED.

Judges CALABRIA and INMAN concur.