IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-927

Filed 7 May 2024

Henderson County, No. 19 CVS 1432

KAREN JONES, JONATHAN WAYNE CORN,
JAN FRANKLIN CORN, and JESSICA CORN
as mother and guardian ad litem of V.E.C.
and J.R.C. (minors), Plaintiffs,

v.

ALBERT HOGAN CORN, JOYCE A. CORN,
KENNETH GREGORY CORN, and
GLENDA SUE CORN, Defendants.

Cross appeals by Plaintiffs and Defendants from order entered 6 June 2023 by Judge William H. Coward in Henderson County Superior Court. Heard in the Court of Appeals 14 March 2024.

*James W. Lee, III, for Plaintiffs-Appellants-Appellees.*

*Barbour, Searson, Jones & Cash, PLLC, by W. Scott Jones & W. Bradford Searson, for Defendants-Appellees-Appellants.*

CARPENTER, Judge.

Both parties appeal from the trial court's order denying Defendants' motion for judgment notwithstanding the verdict ("JNOV") and granting Defendants' motion for a new trial. After careful review, we affirm the trial court's order.

## I. Factual & Procedural Background

This appeal is about siblings disputing their parents' estate. On 15 August

2019, brothers Albert Corn and Kenneth Corn sued their siblings, Karen Jones, Jonathan Corn, and Jan Corn, as well as V.E.C. and J.R.C.,[1] the grandchildren of their deceased brother, Chris Corn, for reformation of a deed.  On 16 August 2019, in a separate case, Karen, Jonathan, Jan, V.E.C., and J.R.C. sued Albert and Kenneth for "lack of capacity/undue influence," "distribution of trust property," conversion, and breach of fiduciary duty.  On 4 March 2022, the trial court consolidated the cases for trial.

Trial evidence tended to show the following.  Albert Corn ("Father") and Jeanette Corn ("Mother") were married and had six children: Albert and Kenneth ("Defendants"), Karen, Jonathan, Jan, and Chris ("Plaintiffs").[2]  On 14 March 2008, Father and Mother executed two trusts (the "Trusts").  Father was the grantor of one Trust, and Mother was the grantor of the other.  Upon the death of Father and Mother, both Trusts named Defendants as co-trustees, and both Trusts mandated an equal distribution of Trust assets among Plaintiffs and Defendants.

Also on 14 March 2008, Father and Mother executed two wills (the "Wills").  Under both Wills, Father and Mother bequeathed their property to each other.  Under both Wills, the surviving spouse bequeathed his or her "tangible personal property" to Plaintiffs and Defendants.  And under both Wills, the surviving spouse bequeathed

---

[1] V.E.C. and J.R.C. are minors.
[2] The trial court referred to Albert and Kenneth as the defendants and Karen, Jonathan, Jan, V.E.C., and J.R.C. as the plaintiffs.  For consistency, we will do the same.

his or her residuary estate, meaning all undisposed "real and personal property," to his or her Trust.

Father died 31 August 2015; Mother died 19 August 2016. But before their death, in 2014, Father and Mother hired attorney Nicole Engel to further advise them about estate planning and property ownership. Attorney Engel is a certified elder-law specialist. Defendants accompanied Mother and Father to their initial meeting with attorney Engel. After meeting with Father, Mother, and Defendants, attorney Engel instructed attorney Margaret Toms to prepare deeds (the "Deeds") for Father and Mother concerning their home (the "Home") and a separate tract of land (the "Tract"). Attorney Toms prepared the deeds.

In the Home Deed, Father and Mother granted themselves a 99% share of the Home, and they granted each Defendant a .5% share of the Home. Father, Mother, and Defendants held the Home as joint tenants with right of survivorship. In other words, if Defendants outlived Father and Mother, Defendants would own the Home upon the death of Father and Mother.

In the Tract Deed, on the other hand, Father and Mother granted each of their Trusts a 49.5% share of the Tract, and they granted each Defendant a .5% share of the Tract. Like the Home, the Tract was held in joint tenancy with right of survivorship. But unlike the Home, Father and Mother's deaths would not change the Tract's ownership: The Tract would remain titled 49.5% to Father's Trust, 49.5% to Mother's Trust, and 1% to Defendants. In other words, the Tract would not become

the exclusive property of Defendants upon Father and Mother's deaths.

After executing the Deeds, attorney Engel sent a "follow-up" letter to Father and Mother. In the letter, attorney Engel stated the following: "Thus, because you individually and as trustees of your revocable trusts have retained majority ownership interest in your real property, the [United States Department of Veterans Affairs] will consider that you have resources equal to the tax value of your ownership interest in your real property."

Unhappy with the results of the Tract Deed, Defendants asked for reformation because the Tract Deed did not match Father and Mother's intent. Defendants sought to reform the Tract Deed to reflect Father and Mother, individually, as grantees, rather than their Trusts as grantees. Put differently, Defendants sought to reform the Tract Deed to reflect Father and Mother's intention for the Tract to be owned exclusively by Defendants after Father and Mother's deaths.

On the other hand, unhappy with both Deeds, Plaintiffs contended that the Deeds were invalid because (1) Father and Mother lacked capacity to consent to the Deeds, and (2) Defendants procured the Deeds through undue influence. And because the Home Deed was invalid, Plaintiffs argued that Defendants necessarily converted rental income from the Home after the death of Father and Mother.

Attorney Engel testified that Father and Mother intended for the Tract to pass to Defendants after Father and Mother passed. Attorney Engel also testified that Father and Mother "probably would not have known, you know, the fact that if [the

Tract] stayed in the trust[, it] would not accomplish that goal." Attorney Engel continued: "between Margaret and I, Margaret Toms, we did make a mistake in that deed. And that didn't accomplish what the Corns' intention was."

Dr. MaryShell Zaffino, Father's primary-care provider from 2014 through 2015, never noted concerns about Father's mental health. Dr. Jennifer Wilhelm was Mother's primary-care provider from 2012 through 2015, and she noted that Mother had anxiety and depression.

Plaintiff Jan stated that Father was more depressed towards the end of his life. Further, she stated that Father experienced hallucinations after his 2014 heart surgery. But Plaintiff Jan also stated that, until his death, Father knew what property he owned, where his property was, and who his relatives were. Plaintiff Jan stated that Mother suffered from anxiety.

Plaintiff John stated that Father lacked capacity to execute the Deeds, and he said that Mother had "a lot of depression." Plaintiff Karen also thought Father lacked capacity to execute the Deeds; she also said that Father sometimes hallucinated. But Plaintiff Karen stated that, until his death, Father knew what property he owned, where his property was, and who his relatives were. Plaintiff Karen said Mother was depressed, and that Mother took several medications, which could disorient her.

Plaintiffs could visit Father and Mother until their deaths; their access to Father and Mother was unmitigated. Attorney Engel did not suspect that Father and Mother were unduly influenced by anyone.

In addition to the Home and the Tract, the parties also disputed the contents of a lockbox (the "Lockbox"). Plaintiff Jonathan purchased the Lockbox for Father and Mother. Plaintiff Jonathan said that he put approximately $80,000 of Father and Mother's cash into the Lockbox, and he never saw the Lockbox again. Defendant Kenneth said that Father, before his death, gifted him the Lockbox, so Defendant Kenneth did not report the Lockbox to Father's estate.

On 8 March 2022, at the close of Plaintiffs' case, Defendants moved for directed verdicts concerning all of Plaintiffs' claims. The trial court denied the motion. At the close of their case, Defendants renewed their directed-verdict motions concerning Plaintiffs' claims and moved for directed verdict concerning their reformation claim. The trial court denied Defendants' motions.

On 10 March 2022, the jury found the following: Father and Mother lacked capacity to execute the Deeds; Defendants unduly influenced Father and Mother to execute the Deeds; the Tract Deed did not require reformation; Defendants converted rental income from the Home; Defendant Kenneth, but not Defendant Albert, converted the Lockbox and its contents; and Defendants owed punitive damages to Plaintiffs.

On 16 March 2022, Defendants moved for JNOV "as to all claims and issues, except the issues of [Defendant Albert] and the [Lockbox], and, in the alternative, for a new trial." On 6 June 2023, the trial court denied Defendants' motion for JNOV and granted Defendants' motion for a new trial.

Orders granting or denying either JNOV or a new trial do not require the trial court to make findings of fact. *See Williams v. Allen*, 383 N.C. 664, 670–72, 881 S.E.2d 117, 121–22 (2022); N.C. Gen. Stat. §§ 1A-1, Rules 50, 59 (2023). Nonetheless, in its order denying JNOV and granting a new trial, the trial court found there was insufficient evidence to support the following jury verdicts: that Father lacked mental capacity to sign the Deeds; that Mother lacked mental capacity to sign the Deeds; that the Deeds were procured by Defendants' undue influence; and that Defendants converted property from Plaintiffs.

On 3 July 2023, Plaintiffs filed notice of appeal. On 11 July 2023, Defendants filed notice of appeal.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(3)(d) (2023) (providing this Court jurisdiction over appeals from orders in which a superior court "[g]rants or refuses a new trial").

## III. Issues

The issues on appeal are whether the trial court erred by: (1) denying Defendants' motion for JNOV; or (2) granting Defendants' motion for a new trial.

## IV. Analysis

### A. Motion for JNOV

On appeal, Defendants argue that the trial court erred by denying its motion for JNOV. We disagree.

We review JNOV rulings de novo. *Hewitt v. Hewitt*, 252 N.C. App. 437, 441, 798 S.E.2d 796, 799 (2017). Under a de novo review, this Court "'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

"The jury is a central foundation of our justice system and our democracy. Whatever its imperfections in a particular case, the jury is a necessary check on governmental power." *Pena-Rodriguez v. Colorado*, 580 U.S. 206, 210, 137 S. Ct. 855, 860, 197 L. Ed. 2d 107, 115 (2017). The jury's role is to "weigh the evidence, determine the credibility of the witnesses, the probative force to be given to their testimony and determine what the evidence proved or did not prove. It [is] the province of the jury to believe any part or none of the evidence." *Daniels v. Hetrick*, 164 N.C. App. 197, 204, 595 S.E.2d 700, 704–05 (2004).

But under certain circumstances, a trial court may usurp the jury's role via JNOV. *See* N.C. Gen. Stat. § 1A-1, Rule 50(b)(1). A party can request JNOV by "mov[ing] to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict . . . ." *Id.* JNOV "shall be granted if it appears that the motion for directed verdict could properly have been granted." *Id.*

A motion for JNOV "is essentially a renewal of an earlier motion for directed verdict." *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 368–69, 329 S.E.2d

333, 337 (1985) (citing *Dickinson v. Pake*, 284 N.C. 576, 583, 201 S.E.2d 897, 902 (1974)). "Accordingly, if the motion for directed verdict could have been properly granted, then the subsequent motion for judgment notwithstanding the verdict should also be granted." *Id.* at 369, 329 S.E.2d at 337 (citing *Manganello v. Permastone, Inc.*, 291 N.C. 666, 670, 231 S.E.2d 678, 680 (1977)).

A directed verdict, and thus JNOV, "is appropriate only when the issue submitted presents a question of law based on admitted facts where no other conclusion can reasonably be reached." *Ferguson v. Williams*, 101 N.C. App. 265, 271, 399 S.E.2d 389, 393 (1991) (citing *Seaman v. McQueen*, 51 N.C. App. 500, 503, 277 S.E.2d 118, 120 (1981)). JNOV is a high hurdle:

> the trial court must view all the evidence that supports the non-movant's claim as being true and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contradictions, conflicts, and inconsistencies being resolved in the non-movant's favor.

*Bryant*, 313 N.C. at 369, 329 S.E.2d at 337–38 (citing *Farmer v. Chaney*, 292 N.C. 451, 452–53, 233 S.E.2d 582, 584 (1977)).

Here, the trial court denied Defendants' JNOV motion concerning their claim for reformation and concerning Plaintiffs' claims for lack of capacity, undue influence, and conversion. We will address each claim in that order.

## 1. Reformation

There are "three circumstances under which reformation could be available as

a remedy: (1) mutual mistake of the parties; (2) mistake of one party induced by fraud of the other; and (3) mistake of the draftsman." *Janice D. Willis Revocable Tr. v. Willis*, 365 N.C. 454, 457, 722 S.E.2d 505, 507 (2012) (citing *Crawford v. Willoughby*, 192 N.C. 269, 271, 134 S.E. 494, 495 (1926)). Mistake of law is not a basis for reformation. *See Mims v. Mims*, 305 N.C. 41, 61, 286 S.E.2d 779, 792 (1982).

Here, Defendants asserted that the draftsman of the Tract Deed, attorney Toms, made a scrivener's error in drafting the Tract Deed by listing the Trusts as grantees. Rather than their Trusts, Father and Mother should have been listed as grantees. To support this assertion, Defendants offered testimony from attorney Engel, who stated that "between Margaret and I, Margaret Toms, we did make a mistake in that deed. And that didn't accomplish what the Corns' intention was."

Viewing the evidence in the light most favorable to Plaintiffs, however, attorney Toms' error can also be reasonably construed as a legal error. In her follow-up letter, attorney Engel stated that Father and Mother retained a majority ownership in the Home and the Tract, "individually and *as trustees of [their] revocable trusts*." In fact, the text of the Trust Deed lists the Trusts as grantees. Attorney Engel's letter, coupled with the text of the Trust Deed, signal that attorney Toms understood who she listed as grantees—but she, and attorney Engel, misunderstood the legal consequences of doing so.

Therefore, resolving inconsistencies in Plaintiffs' favor, *see Bryant,* 313 N.C. at 369, 329 S.E.2d at 337–38, it is reasonable to conclude that attorney Toms made a

legal error, *see Ferguson*, 101 N.C. App. at 271, 399 S.E.2d at 393, which does not support reformation, *see Mims*, 305 N.C. at 61, 286 S.E.2d at 792. Accordingly, the trial court did not err by denying Defendants' motion for JNOV concerning reformation because it is reasonable to conclude that reformation of the Tract Deed is inappropriate. *See* N.C. Gen. Stat. § 1A-1, Rule 50(b)(1).

## 2. Lack of Capacity

A grantor of property must have capacity, and a grantor's capacity requirement is the same as a testator's. *See Gilliken v. Norcom*, 197 N.C. 8, 9, 147 S.E. 433, 433 (1929) ("The law recognizes the same standard of mental capacity for testing the validity of both deeds and wills, although it is suggested that perhaps a court would scrutinize a deed more closely than a will."); *In re Will of Jarvis*, 334 N.C. 140, 145, 430 S.E.2d 922, 925 (1993) (stating the capacity standard for wills).[3]

---

[3] At oral argument, Plaintiffs pointed to *Woody v. Vickrey*, 276 N.C. App. 427, 857 S.E.2d 734 (2021) and asserted that grantors require a higher level of capacity than testators. They do not.

We recognize that we used slightly different language to define grantor capacity in *Woody*. *See id*. at 441, 857 S.E.2d at 744 (citing *Hendricks v. Hendricks*, 273 N.C. 733, 734, 161 S.E.2d 97, 98 (1968)) ("The capacity required to execute a deed includes: (1) understanding the nature and consequences of making a deed; (2) comprehending its scope and effect; and (3) knowing what land he is disposing of and to whom and how."). But in *Woody*, we merely paraphrased the applicable rule and applied it to a deed–grantor scenario. *See id*. at 441, 857 S.E.2d at 744.

We did not create a new rule; the rule for grantor capacity remains the same as the rule for testator capacity. *See Gilliken*, 197 N.C. at 9, 147 S.E. at 433. Understanding "the nature and consequences of making a deed" and the deed's "scope and effect," *see Woody*, 276 N.C. App. at 441, 857 S.E.2d at 744, is no different than "know[ing] the manner in which [the testator] desires his act to take effect" and "realiz[ing] the effect his act will have upon his estate," *see In re Will of Jarvis*, 334 N.C. at 145, 430 S.E.2d at 925; and "knowing what land he is disposing of and to whom and how," *see Woody*, 276 N.C. App. at 441, 857 S.E.2d at 744, is no different than "comprehend[ing] the natural objects of his bounty" and "understand[ing] the kind, nature and extent of his property," *see In re Will of Jarvis*, 334 N.C. at 145, 430 S.E.2d at 925.

A grantor has capacity if he: "(1) comprehends the natural objects of his bounty, (2) understands the kind, nature and extent of his property, (3) knows the manner in which he desires his act to take effect, and (4) realizes the effect his act will have upon his estate." *See id.* at 145, 430 S.E.2d at 925 (citing *In re Will of Shute*, 251 N.C. 697, 699, 111 S.E.2d 851, 853 (1960)).  A lack of any element creates a lack of capacity, *see In re Will of Shute*, 251 N.C. at 699, 111 S.E.2d at 853, but grantors are presumed to have capacity, *see In re Will of Buck*, 130 N.C. App. 408, 412–13, 503 S.E.2d 126, 130 (1998).

A challenger cannot establish lack of capacity without evidence concerning the grantor's capacity when the grantor executed the deed.  *In re Est. of Whitaker v. Holyfield*, 144 N.C. App. 295, 298, 547 S.E.2d 853, 856 (2001) (quoting *In re Will of Buck*, 130 N.C. App. at 413, 503 S.E.2d at 130).  General statements about a grantor's deteriorating health, alone, are insufficient to show a lack of capacity.  *In re Will of Buck*, 130 N.C. App. at 412–13, 503 S.E.2d at 130.

First, we must dispense with Plaintiffs' contention that Father and Mother misunderstood the result of signing the Deeds; a misunderstanding of legal consequences does not create a lack of capacity.  *See In re Will of Farr*, 277 N.C. 86,

---

Although our state Supreme Court hinted that "a court would scrutinize a deed more closely than a will," that scrutiny is in pursuit of "the same standard of mental capacity."  *See Gilliken*, 197 N.C. at 9, 147 S.E. at 433.  Our paraphrasing of an applicable rule should not be read as creating a new one.  *See Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993) (noting that we cannot overrule our state Supreme Court).

92, 175 S.E.2d 578, 582 (1970).

Next, we must wrestle with two competing presumptions: (1) the presumption of capacity, *see In re Will of Buck*, 130 N.C. App. at 412–13, 503 S.E.2d at 130; and (2) the presumption that the jury got the capacity question correct, *see Bryant*, 313 N.C. at 369, 329 S.E.2d at 337–38. To be sure, without more, Plaintiffs' statements concerning Father and Mother's deteriorating health do not refute the presumption of capacity. *See In re Will of Buck*, 130 N.C. App. at 412–13, 503 S.E.2d at 130. But Plaintiffs offered more: They testified that Father and Mother suffered from hallucinations.

Defendants and Plaintiffs both offered evidence that undermined the premise that Father and Mother hallucinated when they executed the Deeds. For example, Plaintiff Karen stated that until his death, Father knew what property he owned, where his property was, and who his relatives were. And as another example, Father's primary-care provider from 2014 through 2015 never noted any concerns about Father's mental health, and Mother's primary-care provider from 2012 through 2015 only noted that Mother had anxiety and depression.

Indeed, based on the evidence, the likelihood that Father and Mother both lacked capacity via hallucination seems slim. But we are reviewing a denial of JNOV; it was the jury's role to weigh the evidence—not ours. *See Daniels*, 164 N.C. App. at 204, 595 S.E.2d at 704–05 (noting that it is the jury's role to "weigh the evidence, determine the credibility of the witnesses, the probative force to be given to their

testimony and determine what the evidence proved or did not prove").

Resolving every contradiction in Plaintiffs' favor, evidence of Father and Mother's declining health—coupled with evidence that they suffered from hallucinations—supports the trial court's denial of JNOV concerning capacity. *See Bryant*, 313 N.C. at 369, 329 S.E.2d at 337–38. In other words, the jury could have reasonably concluded that the parents hallucinated when they executed the Deeds, and the trial court was therefore correct in denying Defendants' motion for JNOV concerning capacity. *See* N.C. Gen. Stat. § 1A-1, Rule 50(b)(1).

### 3. Undue Influence

"There are four general elements of undue influence: (1) a person who is subject to influence; (2) an opportunity to exert influence; (3) a disposition to exert influence; and (4) a result indicating undue influence." *In re Will of McNeil*, 230 N.C. App. 241, 245, 749 S.E.2d 499, 503 (2013) (quoting *In re Sechrest*, 140 N.C. App. 464, 469, 537 S.E. 2d 511, 515 (2000)). Undue influence is a high standard. *See In re Will of Jones*, 362 N.C. 569, 574, 669 S.E.2d 572, 577 (2008). It is:

> a fraudulent influence, or such an overpowering influence as amounts to a legal wrong. It is close akin to coercion produced by importunity, or by a silent, resistless power, exercised by the strong over the weak, which could not be resisted, so that the end reached is tantamount to the effect produced by the use of fear or force.

*Id.* at 574, 669 S.E.2d at 577 (quoting *In re Will of Turnage*, 208 N.C. 130, 131–32, 179 S.E. 332, 333 (1935)).

There is no bright-line test to spot undue influence. *In re Will of Andrews*, 299 N.C. 52, 54–55, 261 S.E.2d 198, 200 (1980). But the North Carolina Supreme Court has listed seven factors to consider when determining whether a person was unduly influenced:

> 1. Old age and physical and mental weakness.
> 2. That the person signing the paper is in the home of the beneficiary and subject to his constant association and supervision.
> 3. That others have little or no opportunity to see him.
> 4. That the will is different from and revokes a prior will.
> 5. That it is made in favor of one with whom there are no ties of blood.
> 6. That it disinherits the natural objects of his bounty.
> 7. That the beneficiary has procured its execution.

*Id.* at 55, 261 S.E.2d at 200 (quoting *In re Will of Mueller*, 170 N.C. 28, 30, 86 S.E. 719, 720 (1915)).

Here, similar to our capacity analysis, we must consider competing high standards: (1) the high standard for undue influence, *see id.* at 55, 261 S.E.2d at 200; and (2) the high standard for granting JNOV, *see Bryant*, 313 N.C. at 369, 329 S.E.2d at 337–38. Plaintiffs could visit Father and Mother until their deaths, and attorney Engel did not suspect that Father and Mother were unduly influenced. Plaintiffs, however, offered evidence concerning other *Andrews* factors. Concerning the first factor, Father and Mother were elderly and mentally weak. Concerning the sixth factor, both Deeds favored Defendants over Plaintiffs. And concerning the seventh factor, Defendants accompanied Father and Mother to their initial meeting with

attorney Engel.

As we must give Plaintiffs the "benefit of every reasonable inference that may legitimately be drawn from the evidence," *see Bryant*, 313 N.C. at 369, 329 S.E.2d at 337–38, a jury could reasonably conclude that Defendants unduly influenced Father and Mother, and that Defendants benefitted from such influence, *see In re Will of McNeil*, 230 N.C. App. at 245, 749 S.E.2d at 503. Accordingly, the trial court did not err by denying Defendants' motion for JNOV concerning undue influence. *See* N.C. Gen. Stat. § 1A-1, Rule 50(b)(1).

### 4. Conversion

Conversion requires "(1) an unauthorized assumption and exercise of right of ownership over property belonging to another and (2) a wrongful deprivation of it by the owner, regardless of the subsequent application of the converted property." *N.C. State Bar v. Gilbert*, 189 N.C. App. 320, 324, 663 S.E.2d 1, 4 (2008). In short, conversion requires "(1) ownership in the plaintiff, and (2) a wrongful conversion by the defendant." *Bartlett Milling Co., L.P. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 86, 665 S.E.2d 478, 489 (2008).

#### a. The Lockbox

Here, under both Wills, Father and Mother bequeathed their property to each other. Under both Wills, the surviving spouse bequeathed his or her "tangible personal property" to Plaintiffs and Defendants. And under both Wills, the surviving spouse bequeathed his or her residuary estate, meaning all undisposed "real and

- 16 -

personal property," to his or her Trust. Both Trusts provided for equal distribution of Trust assets among Plaintiffs and Defendants.

Plaintiffs offered no evidence that they owned the Lockbox before Father's death. If Father owned the Lockbox at his death, however, Plaintiffs were ultimately entitled to an equal distribution of the Lockbox and its contents after Mother's death. Arguing that Plaintiffs were not entitled to a portion of the Lockbox, Defendant Kenneth said that Father gifted him the Lockbox before Father died. So taking Defendant Kenneth's testimony as true, he could not convert the Lockbox from Plaintiffs because Plaintiffs never owned the Lockbox. *See Bartlett Milling*, 192 N.C. App. at 86, 665 S.E.2d at 489.

But in reviewing a JNOV denial, we do not take Defendants' testimony as true. *See Ferguson*, 101 N.C. App. at 271, 399 S.E.2d at 393. Rather, we must look to see if another "conclusion can reasonably be reached." *See id.* at 271, 399 S.E.2d at 393. Here, there was another reasonable conclusion: Defendant Kenneth lied; Father did not gift him the Lockbox. And that conclusion was for the jury to reach—not us. *See Daniels*, 164 N.C. App. at 204, 595 S.E.2d at 704–05.

Thus, giving Plaintiffs the "benefit of every reasonable inference that may legitimately be drawn from the evidence," *see Bryant*, 313 N.C. at 369, 329 S.E.2d at 337–38, a reasonable jury could conclude that Father did not gift the Lockbox to Defendant Kenneth, and thus the Lockbox, and its contents, should have been equally distributed among Plaintiffs and Defendants after Father and Mother's death.

Accordingly, the trial court did not err by denying Defendants' motion for JNOV concerning conversion of the Lockbox. *See* N.C. Gen. Stat. § 1A-1, Rule 50(b)(1); *Bryant*, 313 N.C. at 369, 329 S.E.2d at 337–38.

**b. Rental Income from the Home**

As detailed above, the jury concluded the Home Deed was invalid due to lack of capacity and undue influence, and the trial court correctly upheld that conclusion. The jury also concluded that Defendants converted rental income from the Home after the death of Father and Mother. The trial court upheld that conclusion, too. Because it was correct for the trial court to uphold the jury's conclusion on the Home Deed, it was necessarily correct for the trial court to uphold the jury's conclusion concerning conversion of income from the Home.

In the Home Deed, Father and Mother ostensibly granted themselves, individually, a 99% share of the Home, and they granted each Defendant a .5% share of the Home. In their Wills, Father and Mother bequeathed their property to each other, with the surviving spouse bequeathing his or her residuary estate, meaning all undisposed "real and personal property," to his or her Trust. And both Trusts provided for equal distribution of Trust assets among Plaintiffs and Defendants. Father died 31 August 2015, and Mother died 19 August 2016.

With an invalid Home Deed, the Home therefore remained in the grantors' name, i.e., with Father and Mother. Thus, after Father and Mother died, the Home eventually passed equally to Plaintiffs and Defendants: First, the Home passed to

Mother after Father's death; second, the Home passed to Mother's Trust after Mother's death; third, and finally, the assets in Mother's Trust, including the Home, were to be equally distributed among Plaintiffs and Defendants.

Therefore, because there was enough evidence for the jury to invalidate the Home Deed, there was enough evidence for the jury to find that Defendants converted the Home income. *See Bryant*, 313 N.C. at 369, 329 S.E.2d at 337–38. More specifically, there was enough evidence to show that (1) Plaintiffs were entitled to a portion of the Home, including income from the Home, and (2) Defendants deprived Plaintiffs their share of the Home income. *See Bartlett Milling*, 192 N.C. App. at 86, 665 S.E.2d at 489. Accordingly, the trial court did not err by denying Defendants' motion for JNOV concerning conversion of the Home income. *See* N.C. Gen. Stat. § 1A-1, Rule 50(b)(1); *Bryant*, 313 N.C. at 369, 329 S.E.2d at 337–38.

## B. Motion for New Trial

We now move to Plaintiffs' argument on appeal. Plaintiffs contend that the trial court erred by granting Defendants' motion for a new trial. We disagree.

"It is impractical and would be almost impossible to have legislation or rules governing all questions that may arise on the trial of a case." *Shute v. Fisher*, 270 N.C. 247, 253, 154 S.E.2d 75, 79 (1967). Accordingly, unless bound by statutory obligation, "the presiding judge is empowered to exercise his discretion in the interest of efficiency, practicality and justice." *Id.* at 253, 154 S.E.2d at 79. Following these principles, Rule 59 of the North Carolina Rules of Civil Procedure allows a trial court

to grant a new trial when the evidence is insufficient "to justify the verdict." N.C. Gen. Stat. § 1A-1, Rule 59(a)(7) (2023).

Unlike the usurping nature of JNOV, *see id.* § 1A-1, Rule 50(b)(1), a new trial gives the parties another chance to present their case—and it gives the jury another chance to resolve the case, *see id.* § 1A-1, Rule 59(a)(7). Thus, a new trial does not raise the same concerns as JNOV. *See Pena-Rodriguez*, 580 U.S. at 210, 137 S. Ct. at 860, 197 L. Ed. 2d at 115.

"Where no question of law or legal inference is involved," we review a trial court's decision to grant a new trial for abuse of discretion. *In re Will of Herring*, 19 N.C. App. 357, 359, 198 S.E.2d 737, 739 (1973); *see also In re Will of Buck*, 350 N.C. 621, 629, 516 S.E.2d 858, 863 (1999) (reaffirming that "the uniform standard for appellate review of rulings on Rule 59(a)(7) motions for a new trial for insufficiency of the evidence" is abuse of discretion).

Here, the trial court granted Defendants' motion for a new trial because it found there was insufficient evidence to support the jury verdicts. Therefore, we will review the trial court's order for abuse of discretion. *See In re Will of Herring*, 19 N.C. App. at 359, 198 S.E.2d at 739.

"An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." *In re J.R.*, 250 N.C. App. 195, 201, 791 S.E.2d 922, 926 (2016) (quoting *In re Robinson,* 151 N.C. App. 733, 737, 567 S.E.2d 227, 229 (2002)). Indeed, "it is plain that a trial judge's *discretionary* order

pursuant to [N.C. Gen. Stat. §] 1A-1, Rule 59 . . . may be reversed on appeal only in those exceptional cases where an abuse of discretion is clearly shown." *Worthington v. Bynum*, 305 N.C. 478, 484, 290 S.E.2d 599, 603 (1982).

A trial court's decision to grant a new trial on all issues, rather than a portion of the issues, is also discretionary. *Table Rock Lumber Co. v. Branch*, 158 N.C. 251, 253, 73 S.E. 164, 165 (1911). A trial court will typically grant a partial new trial "when the error, or reason for the new trial, is confined to one issue, which is entirely separable from the others, and it is perfectly clear that there is no danger of complication." *Id.* at 253, 73 S.E. at 165.

Here, in its order granting a new trial, the trial court found that there was insufficient evidence to support the following jury verdicts: that Father lacked mental capacity to sign the Deeds; that Mother lacked mental capacity to sign the Deeds; that the Deeds were procured by undue influence by Defendants; and that Defendants converted property from Plaintiffs.

Given the detailed de-novo analysis required to discern whether Defendants cleared the high JNOV hurdle, we cannot say that it was an abuse of discretion—that it was arbitrary—for the trial court to grant a new trial due to insufficient evidence. *See In re J.R.*, 250 N.C. App. at 201, 791 S.E.2d at 926; N.C. Gen. Stat. § 1A-1, Rule 59(a)(7). Our review of the record indicates a dearth of evidence supporting lack of capacity, undue influence, and conversion. Thus, the trial court's decision to grant a new trial was the result of a reasoned decision and, therefore, not an abuse of

discretion. *See In re J.R.*, 250 N.C. App. at 201, 791 S.E.2d at 926. And because capacity, undue influence, and conversion are not "entirely separable" from the other issues in this case, the trial court did not abuse its discretion by granting a new trial on all issues. *See Table Rock Lumber*, 158 N.C. at 253, 73 S.E. at 165.

Therefore, the trial court did not abuse its discretion by granting Defendants' motion for a new trial because this is not the "exceptional case[] where an abuse of discretion is clearly shown." *See Worthington*, 305 N.C. at 484, 290 S.E.2d at 603.

## V. Conclusion

We conclude that the trial did not err by denying Defendants' motion for JNOV or by granting Defendants' motion for a new trial.

AFFIRMED.

Judges STROUD and COLLINS concur.